T.C. Memo. 2006-19

UNITED STATES TAX COURT

IMAGES IN MOTION OF EL PASO, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7663-03.                    Filed February 7, 2006.

<u>David P. Leeper</u>, for petitioner.

<u>Michael K. Park</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  This matter is before the Court on
petitioner's motion for award of reasonable litigation costs
under section 7430 and Rule 231.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

After conducting a field examination, the Internal Revenue Service (IRS) issued to petitioner a Notice of Determination of Worker Classification (notice of determination), in which it concluded petitioner erroneously classified its dance instructors as independent contractors. Petitioner petitioned this Court for redetermination of the worker classification. After petitioner's petition was filed with the Court, respondent forwarded the case to the IRS Appeals Office. The Appeals officer to whom this case was assigned conceded the worker classification issue, and a stipulated decision was entered on the basis of the settlement. Petitioner filed this motion seeking an award of reasonable litigation costs. To proceed with petitioner's motion, the stipulated decision was vacated and filed as a stipulation of settled issues. After consideration, we hold that petitioner shall be awarded litigation costs to the extent determined herein.

## Background

The parties agree that the motion for litigation costs may be disposed of without a hearing. The stipulation of facts, the exhibits attached thereto, and the stipulation of settled issues are incorporated herein by this reference. When petitioner petitioned this Court, its principal place of business was in El Paso, Texas.

The Business

Petitioner's business is a dance studio that offers classes in dance, gymnastics, martial arts, and other fitness-related activities.

Petitioner is owned and operated by Denise Lopez (Ms. Lopez), who, in 1997, purchased the business as a sole proprietorship, which was doing business as "Champion Studio". Ms. Lopez incorporated the business in 1998 under the name "Images in Motion of El Paso, Inc.",[2] but continued conducting business as "Champion Studio".

In 2001, the IRS examined petitioner's taxable years 2000 and 2001 to determine whether it had complied with Federal employment tax laws. Specifically, the examination was used to determine whether petitioner had properly classified its dance instructors (instructors) as independent contractors rather than employees. The IRS conducted the examination on the basis of information provided by an informant--who was an instructor at petitioner's studio. The Form 3449-CG, Referral Report, states that the instructors were issued "employee manuals" and were required to follow the directives set out in those manuals. Additionally, the referral states that the instructors could be fired if they failed to attend work.

---

[2]The record does not indicate whether petitioner is a C or S corporation.

An employment tax specialist conducted the examination of petitioner (the examining agent). The examining agent interviewed Ms. Lopez. The examining agent also received written responses to questionnaires she provided to four of petitioner's instructors whom she had randomly selected from a list Ms. Lopez provided.

In the interviews of the four instructors, three acknowledged they were given "manuals", but none of them believed the directives were mandatory. Two of the three who received the manuals specifically stated they were not mandatory. The fourth instructor denied that any manual was issued. The documents in question were not titled "manuals" but rather were guidelines for conducting dance classes, instructions in first aid, and an "Employee Code of Conduct". The latter merely set forth basic behavioral norms and prohibited vulgar language.

After reviewing Ms. Lopez's statements and the instructors' responses, the examining agent determined that petitioner and the instructors had created employer-employee relationships rather than principal-independent-contractor relationships. Specifically, the Examining Agent concluded that: (1) Petitioner did not qualify for section 530 relief as provided in the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended; (2) petitioner exercised sufficient behavioral and financial control over its instructors to classify them as employees; and (3)

petitioner's arrangement with its instructors strongly evidenced the existence of an employer-employee relationship.

Procedural History

On October 2, 2002, respondent issued a 30-day letter to petitioner in which he determined petitioner owed Federal employment taxes as follows:

| Tax Period Ended | Kind of Tax and Code Section | Amount of Tax |
|---|---|---|
| 2000 | FUTA, sec. 3301 | $2,630.35 |
| 3/31-12/31/00 | FICA & FITW[1] secs. 3101, 3111, 3402 | 11,343.96 |
| 2001 | FUTA, sec. 3301 | 6,306.01 |
| 3/31-12/31/01 | FICA & FITW secs. 3101, 3111, 3402 | 12,890.36 |
| Total | | 33,170.68 |

[1] Federal income tax withholding.

Respondent enclosed, with the 30-day letter, IRS Publication 5, Your Appeal Rights And How to Prepare a Protest If You Don't Agree (Publication 5). Respondent referred petitioner to Publication 5 if it intended to request an Appeals Office conference.

On October 16, 2002, petitioner's counsel, David P. Leeper (Mr. Leeper), faxed a one-sentence letter requesting an Appeals Office conference. The examining agent notified Mr. Leeper that petitioner was required to submit a formal written protest. On

October 24, 2002, Mr. Leeper stated, in a facsimile sent to the examining agent, that the instructors were independent contractors on the basis of the 20 common law factors used to classify working relationships. The one-page letter met the requirements of a small case request as outlined in Publication 5 since the deficiency for each tax period at issue is less than $25,000.

The examining agent did not forward this case to the Appeals Office, and on February 20, 2003, respondent issued the notice of determination, which stated his determination that petitioner's dance instructors were employees. Accordingly, respondent asserted liabilities against petitioner under the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and the related income tax withholding provisions in the total amount of $33,170.68 for its 2000 and 2001 tax years.

On May 22, 2003, petitioner's petition challenging respondent's assertions in the notice of determination was filed. The case was then forwarded to the Appeals Office in Austin, Texas. In August 2003, the assigned Appeals officer contacted petitioner's counsel by telephone. During this discussion, petitioner's counsel agreed to submit a formal written protest containing petitioner's arguments supporting its position that its instructors were independent contractors. On September 4, 2003, petitioner submitted a 36-page document to the Appeals

officer in which it argued that the instructors were independent contractors, not employees.  Apparently attempting to prevent the document from being introduced at trial, petitioner qualified the document as only for settlement purposes.

After reviewing the information contained in petitioner's document, the Appeals officer determined that petitioner had a significant chance of prevailing on the worker classification issue.  The Appeals officer conceded the case because "the Government faces overall litigating hazards in excess of 80 percent in reclassifying the instructors at issue from independent contractors to employees."  The Appeals officer reached this conclusion after reviewing the available information in this case and finding that "the taxpayer has a substantial chance of prevailing in its contention that the instructors * * * were independent contractors as originally classified" under the 20 common law factors and "in establishing that Section 530 safe haven provisions [of the Revenue Act of 1978] are present".  On the basis of the Appeals officer's settlement, a stipulated decision was executed by the parties and entered by the Court on November 5, 2003.

On December 18, 2003, we granted petitioner's motion to vacate decision, which was filed on December 15, 2003, so that petitioner's motion for reasonable litigation costs could

proceed. On December 18, 2003, petitioner's motion for award of reasonable litigation costs was filed.

## Discussion

Petitioner's motion is for reasonable litigation costs, which may be awarded only if the taxpayer satisfies all of the requirements set forth in section 7430. Goettee v. Commissioner, 124 T.C. 286, 289 (2005); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). In relevant part, section 7430(a) provides that the prevailing party may be awarded reasonable litigation costs in connection with any court proceeding brought by or against the United States for the determination of any tax. In addition to being the prevailing party, to be eligible for litigation costs, a taxpayer must have: (1) Exhausted all administrative remedies, and (2) not unreasonably protracted the underlying proceeding. Sec. 7430(b)(1), (3).

A taxpayer is generally the prevailing party if it substantially prevailed with respect to either the amount in controversy or the most significant issue or set of issues and if it meets the net worth requirement set forth in the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d)(2)(B). Sec. 7430(c)(4)(A). The taxpayer bears the burden of proving that these requirements are met. Rule 232(e). Even if the taxpayer satisfies all of the stated requirements, section 7430(c)(4)(B) expressly provides that a taxpayer shall not be treated as the

prevailing party if the Commissioner establishes his position was substantially justified.

Respondent concedes that:  (1) Petitioner meets the net worth requirement; (2) petitioner's request for litigation costs was timely; and (3) petitioner substantially prevailed with respect to the most significant issue.  However, respondent contends:  (1) Petitioner is not the prevailing party because his litigating position was substantially justified; (2) petitioner failed to exhaust all administrative remedies available to it; (3) petitioner unreasonably protracted the proceedings; and (4) petitioner did not adequately substantiate its claimed litigation costs.

A.   Whether Petitioner Exhausted the Available Administrative Remedies

The parties dispute whether petitioner exhausted all administrative remedies.  This dispute stems from the following facts:

(1) The IRS issued to petitioner a 30-day letter on October 2, 2002, and included Publication 5;

(2) petitioner faxed a one-sentence letter to the IRS requesting an Appeals Office conference on October 16, 2002;

(3) the IRS notified petitioner that it was required to file a formal written protest to obtain an Appeals Office conference;

(4) petitioner faxed a three-sentence letter on October 24, 2002, which stated: "Our appeal request stands as submitted. This taxpayer does not exercise sufficient control as described in the 20 common law factors to be subject to the employment tax, which you determined.  We seek a conference at an appeals hearing to review your determination."; and

(5) on October 25, 2002, the IRS, by letter, gave petitioner 15 days from the date of the letter to file a "valid protest" to the 30-day letter since it believed petitioner's request did not adequately set forth its legal and factual arguments in accordance with Publication 5.

Petitioner urges us to find that its letter dated October 24, 2002, was sufficient to request an Appeals Office conference. Respondent counters that section 601.105(d)(2)(iii), Statement of Procedural Rules, required petitioner to file a written protest to obtain Appeals Office consideration following the field examination since the total amount of proposed tax including penalties exceeded $10,000 for a taxable period.  See also sec. 601.106(a)(1)(iii)(b), Statement of Procedural Rules.  We must review the regulations and the information the IRS provided to petitioner, to resolve this issue.

Section 301.7430-1(b)(1), Proced. & Admin. Regs., provides:

> A party has not exhausted the administrative remedies available within the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available under §§ 601.105 and 601.106 of

this chapter (other than a tax matter described in paragraph (c) of this section) unless--

(i)  The party, prior to filing a petition in the Tax Court * * * participates * * * in an Appeals office conference; or

(ii)  If no Appeals office conference is granted, the party, prior to the issuance of a statutory notice in the case of a petition in the Tax Court * * *

(A) Requests an Appeals office conference in accordance with §§ 601.105 and 601.106 * * *; and

(B) Files a written protest if a written protest is required to obtain an Appeals office conference.

Respondent's 30-day letter sent to petitioner states:

If you do not accept our findings, we recommend that you request a hearing with our Office of Regional Director of Appeals. * * *

If the proposed change is more than $2,500 but is * * * $25,000 or less for any tax period, you must give a brief written statement of the disputed issues.

If the proposed change to you [sic] tax (including penalties) is MORE THAN $25,000 for any tax period, we will require a written protest.  Follow the instructions in the enclosed Publication 5, which also explains your appeal rights.

According to Publication 5, a taxpayer must follow the instructions in the 30-day letter to receive an Appeals Office conference.  Publication 5 directs a taxpayer to file its formal written protest or small case request with the office named in the 30-day letter to receive an Appeals Office conference. Publication 5 contains the same monetary ranges as the 30-day letter, which instructs the taxpayer to file either a small case request or formal written protest.  Additionally, to complete a

small case request for an Appeals Office conference Publication 5 states that a taxpayer must send a letter in which it identifies the IRS's proposed changes that the taxpayer disagrees with and the reasons for disagreement.

Finally, Internal Revenue Manual (IRM) part 8.6.1.1.4(1) (Dec. 13, 1999), Written Protests and "Small Case Requests" in Unagreed Cases, states:  "Appeals will consider matters under its small case request procedures if the total amount for any tax period is not more than $25,000."  The small case request requirements under the IRM are virtually identical to those stated in Publication 5.  Unlike a written request for a small case, a written protest is "required to obtain Appeals consideration if the total amount for any tax period is more than $25,000."  IRM pt. 8.6.1.1.4(2) (Dec. 13, 1999).  A written protest must include, among other things, "the facts supporting the taxpayer's position on any disagreed issue, and the law or authority, if any, on which the taxpayer relies."  IRM pt. 8.6.1.1.4(2) (Dec. 13, 1999).

In this case, for each tax period at issue the proposed change was less than $25,000.  Having reviewed petitioner's letter dated October 24, 2002, we find that it complied with the small case request requirements set forth in the 30-day letter, Publication 5, and the IRM.  Respondent did not grant petitioner's request but instead directed petitioner, in a letter

dated October 25, 2002, to file a formal protest since "your protest has not been completed in accordance with the guidelines outlined in the enclosed Publication 5." Petitioner did not comply with this request.

Because the amounts of tax used in the 30-day letter, Publication 5, and IRM part 8.6.1.1.4 are inconsistent with section 601.105(d)(2), Statement of Procedural Rules, we must decide whether petitioner's compliance with the 30-day letter and Publication 5 satisfies the statutory requirement to have exhausted all administrative remedies. We note that the IRS has no duty to comply with section 601.105, Statement of Procedural Rules, or any other rules that do not have the force and effect of law. See Luhring v. Glotzbach, 304 F.2d 560, 563 (4th Cir. 1962) (finding section 601.105, Statement of Procedural Rules, does not have the force and effect of law); see also Ward v. Commissioner, 784 F.2d 1424, 1430-1431 (9th Cir. 1986) (holding the IRS has no duty to comply with section 601.601(d), Statement of Procedural Rules, because it does not have the force and effect of law), affg. T.C. Memo. 1984-570.

With this background in mind, we note respondent did issue a 30-day letter, and section 601.105(c)(2)(i), Statement of Procedural Rules, requires a 30-day letter to provide a detailed explanation of the available alternatives including consideration of the case by an Appeals Office. Similarly, section

601.105(d)(1), Statement of Procedural Rules, provides that the 30-day letter must inform the taxpayer of the available appeal rights in case the taxpayer disagrees with the proposed determination. Neither the 30-day letter nor Publication 5 references section 601.105 or 601.106, Statement of Procedural Rules, for the proposition that a written protest is required for an Appeals Office conference to be granted following a field examination where the proposed additional tax exceeds $10,000 for a tax period. To the contrary, as stated above, the small case request limit in Publication 5 and the 30-day letter is $25,000. Here, the potential liabilities exceeded $10,000 for the two periods at issue but not $25,000 for any period.

As noted, the Statement of Procedural Rules, of which section 601.105 is a part, is directory and not mandatory. Rosenberg v. Commissioner, 450 F.2d 529 (10th Cir. 1971), affg. T.C. Memo. 1970-201; Luhring v. Glotzbac, supra; Flynn v. Commissioner, 40 T.C. 770, 773 (1963). Petitioner is not asserting that respondent's failure to comply with any directives invalidates any action respondent took. Instead, petitioner's position is that it complied with the instructions that the IRS provided, and the fact that there is a conflict in the IRS procedures should be resolved in its favor. Petitioner complied with the procedures outlined in Publication 5 and the 30-day letter to file a brief written request to receive an Appeals

Office conference.  Accordingly, we hold petitioner reasonably attempted to exhaust the administrative remedies available.

Our analysis is not in conflict with the general rule that "taxpayers rely on * * * [IRS] publications at their peril." Miller v. Commissioner, 114 T.C. 184, 195 (2000), affd. on other grounds sub nom. Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002); see Carpenter v. United States, 495 F.2d 175 (5th Cir. 1964).  This rule was adopted since publications are not binding on the Government, nor can they change the plain meaning of a statute.  See, e.g., Miller v. Commissioner, supra at 195. Petitioner satisfied the steps outlined by respondent's correspondence, but it was not given an Appeals Office conference, as discussed in further detail infra.  Thus, there is no statutory conflict.

Likewise, this case is distinguishable from Haas & Associates Accountancy Corp. v. Commissioner, 117 T.C. 48 (2001), affd. 55 Fed. Appx. 476 (9th Cir. 2003).  Petitioner, unlike the taxpayers in Haas Associates Accountancy Corp., filed a written request for an Appeals Office conference in accordance with the 30-day letter and Publication 5.  Moreover, once this case was forward to the Appeals Office, after being docketed with the Court, petitioner cooperated with the Appeals Office, unlike the taxpayers in Haas Associates Accountancy Corp.  Given these

factual differences, <u>Haas Associates Accountancy Corp.</u> does not dictate the result in this case.

In explaining the exhaustion of administrative remedies provision the House of Representatives Ways and Means Committee's report states:

> * * *  This provision of the bill is intended to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation.  A taxpayer who actively participates in and discloses all relevant information during the administrative stages of the case will be considered to have exhausted the available administrative remedies. Failure to so participate and disclose information **may be** sufficient grounds for determining that the taxpayer has not exhausted administrative remedies and, therefore, is ineligible for an award of litigation costs.
> The committee recognizes that the exhaustion of remedies requirement may be inappropriate in some cases. * * * Therefore, taxpayers are required to exhaust available administrative remedies unless the court determines that, under the circumstances of the case, such requirement is unnecessary. [H. Rept. 97-404, at 13 (1981); emphasis added.]

See Staff of Joint Comm. on Taxation, General Explanation of the Tax Equity and Fiscal Responsibility Act of 1982 (the so-called Blue Book), at 448 (J. Comm. Print 1982).

The cited legislative history shows Congress enacted the exhaustion of administrative remedies requirement because it was concerned with taxpayers attempting to bypass administrative review, which would create an incentive to undermine a principal forum to resolve a dispute.  See also Payment of Attorneys' Fees in Tax Litigation:  Hearing Before the Subcomm. on Select Revenue

Measures of the H. Comm. on Ways and Means, 97th Cong. 97-29 (1981) (statement of John E. Chapoton, Assistant Secretary for Tax Policy, Department of the Treasury, and Roscoe L. Egger, Jr., Commissioner of Internal Revenue stating their concern that H.R. 3262, 97th Cong., 1st Sess. sec. 2 (1981), did not contain a requirement that the taxpayer exhaust the available administrative remedies before attorney's fees could be awarded). The record is devoid of any indication that petitioner withheld relevant facts. The examining agent's report supports a conclusion that Ms. Lopez was forthcoming and cooperative during the examination process. Following the issuance of the 30-day letter, petitioner appropriately requested that this case be forwarded to the Appeals Office for review. It is clear the requirement in section 301.7430-1(b)(1), Proced. & Admin. Regs., that attendance at an Appeals Office conference is necessary to exhaust administrative remedies is conditioned on the availability of the Appeals Office conference to the taxpayer. Petitioner attempted to pursue an administrative appeal in the hope of resolving this case because petitioner complied with the 30-day letter and Publication 5. Despite petitioner's efforts, the Examination Division did not make an Appeals Office conference available to petitioner. Cf. Haas & Associates Accountancy Corp. v. Commissioner, supra at 62.

Finally, we note that Publication 5 and the applicable IRM section were drafted more than 10 years after section 601.105(d)(2)(iv), Statement of Procedural Rules, was last amended in 1987.[3]  While procedural rules and publications are not laws, they act as guides for the IRS and taxpayers to follow.

We therefore hold that petitioner satisfied the statutorily imposed requirement to have exhausted all administrative remedies available by filing a written request for an Appeals Office conference.

B.    Whether Respondent's Litigating Position Was Substantially Justified

In the context of a motion for reasonable litigation costs, a "court proceeding" is any civil action brought in a court of the United States.  Sec. 7430(c)(6).  The litigating position of the United States is the position it takes in the court proceeding to which section 7430(a) applies.  Sec. 7430(c)(7); Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).  Respondent's litigating position is found in his answer, which was filed on June 30, 2003.  Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144; Maggie Mgmt. Co. v. Commissioner, supra at 442.  Respondent's position in the answer was that:  (1)

---

[3]  In 1993, the IRS proposed amendments to the Statement of Procedural Rules, permitting a small case request dollar limitation of "not more than $25,000".  Sec. 601.106(b)(4), Proposed Statement of Procedural Regs., 58 Fed. Reg. 48805 (Sept. 20, 1993).  This proposal has yet to be adopted.

The workers described in the notice of determination were properly classified as employees for the tax periods at issue; (2) petitioner was not entitled to relief under section 530 of the Revenue Act of 1978 with respect to such individuals; and (3) petitioner owed $33,170.68 of additional Federal employment taxes.

As stated above, respondent contends that his position is substantially justified. Respondent's position is substantially justified if it has a reasonable basis in both fact and law. Maggie Mgmt. Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985); sec. 301.7430-5(c), Proced. & Admin. Regs. We apply the reasonable person standard to determine reasonableness. See Pierce v. Underwood, 487 U.S. 552, 565 (1988) (stating that the Commissioner's position is substantially justified if it is supported "to a degree that could satisfy a reasonable person"). The reasonableness of the Commissioner's position is based on the available facts used to form his position and legal precedents related to the case. Maggie Mgmt. Co. v. Commissioner, supra at 443. We shall review the reasonableness of respondent's factual and legal positions together since employment status is generally a factual question. See Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).

A significant factor we use in deciding whether the Commissioner's position is substantially justified is whether the

taxpayer presented all relevant information under its control and relevant legal arguments supporting its position to the appropriate IRS personnel.  Sec. 301.7430-5(c)(1), Proced. & Admin. Regs.  "Appropriate Internal Revenue Service personnel" are those employees reviewing the taxpayer's information or arguments, or those employees who, in the normal course of procedure and administration, would transfer the information or arguments to the reviewing employees.  Id.

1.    The Dispute:  Employee Versus Independent Contractor

The employment tax sections of the Internal Revenue Code are in subtitle C.  Sections 3111 and 3301 impose taxes on employers under FICA and FUTA, respectively, based on wages paid to employees.  Section 3101 imposes a tax on employees under FICA based on their wages paid, which the employer is required to collect under section 3102.  The term "wages", as used in these statutes, generally encompasses "all remuneration for employment".  Secs. 3121(a), 3306(b).  The term "employee", for FICA taxes purposes, is defined in section 3121(d), and, with modifications not pertinent here, section 3306(i) makes this definition applicable for purposes of FUTA taxes as well. Section 3121(d)(2) provides that an "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".  Section 31.3121(d)-1(c)(2), Employment Tax Regs., defines the common law employer-employee relationship as follows:

(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *

We have held that even though the determination of employee status is to be made by common law concepts, a realistic interpretation should be adopted, and doubtful questions should be resolved in favor of employment. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001).

Section 530 of the Revenue Act of 1978 (section 530) provides relief from employment tax liability. Pub. L. 95-600, 92 Stat. 2885 (as amended). A taxpayer is entitled to relief under section 530 if it demonstrates: (1) It did not treat an individual as an employee for employment tax purposes for any period, sec. 530(a)(1); (2) it filed all required Federal tax returns consistent with its treatment of the individual, id.; and (3) it had "a reasonable basis for not treating an individual as

an employee", sec. 530(a)(2).  A taxpayer is deemed to have a reasonable basis if the taxpayer established its "treatment of such individual * * * was in reasonable reliance on":

> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

> (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

> (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged. [Id.]

Courts have noted that, in addition to the safe harbors of section 530(a)(2), a taxpayer may demonstrate any other reasonable basis for the treatment of an employee for tax purposes.  See, e.g., Springfield v. United States, 88 F.3d 750, 753 (9th Cir. 1996); Boles Trucking, Inc. v. United States, 77 F.3d 236, 239 (8th Cir. 1996).  The legislative history reveals that the reasonable basis inquiry is to be liberally construed in favor of the taxpayer.  See H. Rept. 95-1748, at 5 (1978), 1978-3 C.B. (Vol. 1) 629, 633.  Section 530(e)(4) places the burden of proof on the Secretary if the taxpayer establishes a prima facie case that it was reasonable not to treat an individual as an employee, and the taxpayer has complied with the Secretary's reasonable requests for tax periods at issue.

2.  <u>Reasonableness</u>

Respondent argues that his position is substantially justified because the facts gathered during examination and the law, taken together, indicate petitioner had improperly classified its instructors as independent contractors. Respondent further contends that petitioner did not provide all relevant legal arguments that its instructors were independent contractors, not employees.  Before we address whether respondent's position was reasonable, the parties dispute whether the Appeals officer's determination is relevant to the reasonableness of respondent's position.

      a.    <u>Whether the Appeals Officer's Determination Is Relevant to the Reasonableness of Respondent's Litigating Position</u>

Respondent urges the Court to review the examining agent's report as the basis for the position taken in the answer, but to not consider the Appeals officer's analysis.  Petitioner argues that the Appeals transmittal and case memo is relevant in deciding whether respondent's position was reasonable.  The record establishes that respondent's examining agent had the relevant facts in her possession before the notice of determination was issued.  This is significant since the common law factors and section 530 relief are both fact-intensive inquiries.  Thus, we find that the Appeals officer's analysis is a written document recapitulating the relevant facts of this case and is relevant.

In addition, respondent's litigating position in his answer generally denies petitioner's allegations. Because the answer does not contain any significant analysis, we rely upon the facts as developed by the examining agent as the reasoning behind respondent's contentions.

b.  Was Respondent's Litigating Position Reasonable?

Whether petitioner properly classified its instructors as employees is a question of fact. See Weber v. Commissioner, 103 T.C. at 386; Packard v. Commissioner, 63 T.C. 621, 629 (1975). We generally accord significant weight to the amount of control a taxpayer exercises over its instructors since control is the "crucial test" in determining the nature of a working relationship. Gen. Inv. Corp. v. United States, 823 F.2d 337, 341 (9th Cir. 1987). In determining the nature of a working relationship, the threshold level of control for the creation of an employer-employee relationship varies depending on the nature of the services the worker provided. Weber v. Commissioner, supra at 387-388.

Respondent conceded the ultimate issue: whether petitioner properly classified its instructors as independent contractors. This concession is not necessarily determinative that respondent's prior position on that issue was unreasonable. Portillo v. Commissioner, 988 F.2d 27, 28 (5th Cir. 1993), revg. T.C. Memo. 1992-99. However, it is a factor that we may

consider.  See <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. at 443;

<u>Powers v. Commissioner</u>, 100 T.C. 457, 471 (1993), affd. in part,

revd. in part and remanded on another issue 43 F.3d 172 (5th Cir.

1995).  On this point, it was the Appeals officer's review of the

facts that led him to conclude that "the common law factors do

not support a finding that the taxpayer had the right to control

and direct the work of the instructors as to the details and

means by which they accomplished their work."

The facts do not support respondent's position that the

examining agent had insufficient information to accept

petitioner's worker classification or that the facts indicated

petitioner's worker classification was incorrect.  The

examining agent determined that petitioner's dance instructors

were employees after considering three factors--(1) behavioral

control, (2) financial control, and (3) the relationship of the

parties.[4]  The examining agent determined the behavioral control

_____

[4]This Court generally considers seven factors in deciding
whether a worker is an independent contractor or a common law
employee.  See, e.g., <u>Ewens & Miller, Inc. v. Commissioner</u>, 117
T.C. 263, 269 (2001); <u>Profl. & Executive Leasing, Inc. v.
Commissioner</u>, 89 T.C. 225, 233 (1987) (reviewing the following
factors to decide the existence of an employment relationship:
(1) The degree of control exercised over the details of the work;
(2) investment in the work facilities; (3) opportunity for profit
or loss; (4) whether the type of work is part of the principal's
regular business; (5) right to discharge; (6) permanency of the
relationship; and (7) the relationship the parties think they are
creating), affd. 862 F.2d 751 (9th Cir. 1988).  The Appeals
officer's review of this case relied on the 20 common law
factors.  Rev. Rul. 87-41, 1987-1 C.B. 296.  His analysis shows
that the 20 common law factors, when not condensed into only
                                                (continued...)

factor supported an employer-employee relationship.  She relied on the following facts to make her determination:  (1) Petitioner provided a worker's manual to some instructors; (2) Ms. Lopez held meetings with the instructors; and (3) petitioner required the instructors to dress appropriately and not play obscene music.  The examining agent found petitioner had financial control over the instructors since it had a substantial investment in the studio and equipment, and the instructors were remunerated on the basis of either an hourly rate or a percentage of tuition fees.  Regarding the relationship of petitioner and its instructors, there were no written contracts and the parties verbally agreed to the relationship as independent contractors, but petitioner could terminate the working relationship.  There is, however, no evidence that any of the instructors were terminated.  The examining agent likewise determined petitioner could not benefit from section 530 relief since it did not establish a reasonable basis for treatment of its instructors as independent contractors.

Our review of the examining agent's analysis demonstrates that she failed to consider many facts contradicting her conclusions, failed to consider the facts mitigating an inference

---

[4](...continued)
three factors, overwhelmingly indicate petitioner's instructors were independent contractors.  We believe the three-factor approach the examining agent used overly generalized the common law factors.

that the instructors were employees, or failed to give such facts the appropriate amount of weight. First, with respect to behavior control, three of the four instructors interviewed stated they received a "manual" when they became instructors at the studio. However, the instructor interviews do not support the conclusion that the "manual" was mandatory. The interviewed instructors neither recalled the dance class instructions in the manual ever being enforced nor did they sign anything stating they had received it. Having reviewed the portion of the manual included in the record, we find it provided helpful tips for instructors and information regarding emergency situations. We find it was unreasonable for respondent to rely on the "manual" as evidence of control given the instructors' statements and the overall factual record developed during the audit. As the Appeals officer found, the "manual" was no more than a guideline. Moreover, the instructors selected the classes they wanted to teach, and these classes represented their individual talents and experience. Petitioner never provided the instructors with any training. The instructors brought their expertise to the relationship with petitioner. The amalgamation of these findings indicates that it was unreasonable for the examining agent to conclude petitioner had a sufficient level of control over the instructors to classify them as employees.

We also believe that respondent's litigating position with respect to financial control was unreasonable. Petitioner had a

substantial financial investment in the studio.  However, each instructor has a large financial stake in her dance abilities, and the instructors were required to purchase their own music and costumes.  In this context, the concept of financial control is not helpful to resolve the worker classification issue because the examining agent did not rely on specific facts consistent with the 20 common law factors or the 7 factors this Court generally applies.  See Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 233 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Rev. Rul. 87-41, 1987-1 C.B. 296 (listing the common law factors that apply to the worker classification issue); cf. Vendor Surveillance Corp. v. United States, 116 F.3d 488 (9th Cir. 1997).

We also find it was unreasonable for the examining agent to conclude that petitioner did not qualify for section 530 relief. Petitioner and the instructors believed their relationship was that of principal-independent-contractor.  This was orally agreed between the instructors and petitioner or between the instructors and the business's previous owner.  In addition, the previous owner of the business had always treated the instructors as independent contractors, the relationships created by petitioner and its instructors were not permanent, and the instructors selected the classes they were going to teach each session.  If an instructor did not sign up to teach in a subsequent session, the working relationship between that instructor and petitioner

ended. Petitioner, therefore, had a reasonable basis for classifying the instructors as independent contractors.

Lastly, respondent argues that petitioner failed to provide the appropriate IRS personnel with the relevant information under its control and relevant legal arguments supporting its position. See sec. 301.7430-5(c)(1), Proced. & Admin. Regs. Petitioner cooperated with the audit, and petitioner properly filed a small case request in accordance with Publication 5 and the 30-day letter as discussed above. Petitioner's request for an Appeals Office conference stated that on the basis of the 20 common law factors it did not agree with the conclusions set out in the 30-day letter. Determining the type of working relationship, as we have previously stated, requires a fact-based analysis. The record shows that petitioner provided the examining agent with all of the relevant factual information she sought, including access to interview its owner and instructors. We therefore find that petitioner satisfied the requirement of section 301.7430-5(c)(1), Proced. & Admin. Regs.

Taking our findings together, we hold respondent's litigating position was not substantially justified.

C. Did Petitioner Unreasonably Protract the Proceedings?

Respondent argues that petitioner unreasonably protracted the proceedings by failing to provide a written protest before the notice of determination was issued. We disagree. We have already concluded that the Examination Division's failure to

forward this case to the Appeals Office after petitioner filed a valid written request was not the result of a failure of compliance by petitioner.  Given the facts of this case, we find petitioner did not unreasonably protract these proceedings within the meaning of section 7430(b)(3).

D.    Litigation Costs Petitioner Claimed

Petitioner's motion is only for litigation costs.  Section 7430 limits the prevailing party to an award of reasonable litigation costs.[5]  Section 7430(c)(1)(B)(iii) generally limits the hourly rate for attorney's fees.[6]  A taxpayer may recover attorney's fees above the statutory limit if the court determines the existence of a special factor such as:  (1) Limited availability of qualified attorneys for the proceeding; (2) the difficulty of the issues present in the case; or (3) the local availability of tax expertise.  Id.

Petitioner claims that its counsel deserves a rate of $250 per hour for the 118.25 hours he spent in connection with these proceedings.  Respondent challenges the hourly rate claimed since it is above the statutory limit and questions whether some of the

[5]Reasonable litigation costs include, inter alia, reasonable court costs and fees paid or incurred for the services of attorneys in connection with a court proceeding (attorney's fees).  Sec. 7430(c)(1).

[6]Rev. Proc. 2002-70, sec. 3.32, 2002-2 C.B. 845, 850; Rev. Proc. 2003-85, sec. 3.33, 2003-2 C.B. 1184, 1190; and Rev. Proc. 2004-71, sec. 3.35, 2004-2 C.B. 970, 976, respectively, state that the hourly rate for attorney's fees during 2003-2005 is $150.

claimed services were in connection with this court proceeding. Before we address these issues, we are asked to decide whether petitioner has provided a detailed affidavit that distinctly sets forth each item or cost paid or incurred for which an award is claimed. See Cassuto v. Commissioner, 93 T.C. 256, 271 (1989), affd. in part and revd. in part on other grounds 936 F.2d 736 (2d Cir. 1991).

### 1. Petitioner's Affidavit

Rule 232(d) provides that if the parties are unable to agree as to the amount of attorney's fees that is reasonable, the moving party shall file an additional affidavit which includes: (1) A detailed summary of the time expended by each individual for whom fees are sought, including a description of the nature of the services performed during each period; (2) a description of the fee arrangement; (3) the professional qualifications and experience of each individual for whom fees are sought; (4) a statement of whether a special factor exists; and (5) any other relevant information to assist the Court in evaluating the claim for costs and fees.

Attached to petitioner's opening brief was a detailed affidavit of the hours petitioner's counsel spent in connection with these proceedings. The affidavit also contained a brief description of the services provided and the qualifications of petitioner's counsel. Respondent has not objected to the detailed affidavit's being attached to petitioner's opening

brief.  We find that the affidavit attached to petitioner's opening brief satisfies Rule 232(d).

### 2. Respondent's Challenge to Petitioner's Claim for Attorney's Fees Above the Statutory Limit

Respondent challenges the hourly amount petitioner claims for attorney's fees since that rate exceeds the statutory maximum.  Respondent argues that petitioner has failed to show the existence of a special factor, such as one of those set forth in section 7430(c)(1)(B)(iii), to justify a higher rate. Petitioner counters by arguing that a higher hourly rate is justified in this case because:  (1) Its counsel has an LL.M. in taxation and is a board-certified Federal tax attorney; (2) its counsel is one of three board-certified attorneys in El Paso, Texas; (3) its counsel possessed special skills necessary to litigate a worker classification dispute; and (4) its counsel's special skills caused respondent to concede the ultimate issue. We agree with respondent.

Petitioner's argument that its counsel has an LL.M. in taxation and State certification as a tax law specialist does not, by itself, satisfy the special factor requirement.  Section 7430 provides the mechanism for taxpayers to recover administrative and litigation costs.  See Cassuto v. Commissioner, supra at 742.  Congress could not have intended all attorneys with tax lawyering skills to recover amounts greater

than the maximum set forth in the statute since such a reading would make the limit superfluous. See id.

Petitioner's argument that because its counsel is one of three board-certified tax attorney's in the El Paso area a per-hour rate above the statutory maximum should be awarded also fails. The issue in this case was a question of fact, and the determination of the ultimate issue largely relied on common law principles. Thus, petitioner did not demonstrate that there was a limited availability of attorneys who could adequately represent it in this case.

Petitioner's second argument, that worker classification litigation requires special skills, also fails. Petitioner has not provided us with any information that suggests its counsel was a worker classification specialist. Even though petitioner's counsel focuses his practice on tax litigation, we do not find that requires a different result from the one reached with respect to his education and certifications. Again, worker classification is a fact-based inquiry, and we believe that no special knowledge is needed to set forth the relevant facts and legal precedents.

Petitioner's third argument, that its counsel's special skills caused respondent to concede the ultimate issue, is also unconvincing because the facts the Appeals officer relied on in making his decision to concede the ultimate issue were established by the examining agent. It appears that in drafting

his answer respondent merely relied on the conclusions set forth in the notice of determination. The Appeals officer provided a fresh review of the issue and concluded that petitioner had a significant chance of prevailing. Accordingly, respondent's concession of the ultimate issue is not a special factor under section 7430(c)(1)(B)(iii).

We therefore hold that petitioner is entitled to the statutory per-hour fee of $150.

3. The Specific Items Respondent Takes Issue With

Section 7430(c)(1) provides that reasonable litigation costs include, inter alia, "reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding". Respondent takes issue with some of the fees petitioner's counsel claims, arguing that they were not in connection with this proceeding. The items respondent takes issue with are as follows:

| Date | Claimed Item | Hours |
|---|---|---|
| 10/8/02 | Conference with new client | 2.25 |
| 10/9/02 | Lengthy analysis of Federal tax laws per 3121, relief under Act 530, CSP program relief, procedural circumstances | 7.75 |
| 10/16/02 | Draft of request for Appeals Office conference | .50 |

| | | |
|---|---|---|
| 10/24/02 | Draft of request for Appeals Office conference | .25 |
| 10/29/02 | Draft of request for Appeals Office conference | .25 |
| 2/28/03 – 3/28/03 | Review and analysis of IRS Notice of Determination of Worker Reclassification, several conferences with client and her workers. Research of Federal tax laws and numerous cases | 13.25 |

The issue for decision is whether these are recoverable as litigation fees.

Section 301.7430-4(c)(3)(i), Proced. & Admin. Regs., provides that litigation costs include "Costs incurred in connection with the preparation and filing of a petition with the United States Tax Court or in connection with the commencement of any other court proceeding".  Two examples are provided in section 301.7430-4(c)(4), Proced. & Admin. Regs.,[7] and we find aspects of the reasoning of each to be applicable here.  Section 301.7430-4(c)(4), Examples (1) and (2), Proced. & Admin. Regs., provides:

---

[7]We note that the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3101(a)(2), 112 Stat. 727, expanded the period for which administrative costs are recoverable. See sec. 7430(c)(2)(B).  Although the examples have not been updated to reflect this change, petitioner has requested only litigation costs; thus, the examples are applicable here.

Example (1).  Taxpayer A receives a notice of proposed deficiency (30-day letter).  A files a request for and is granted an Appeals office conference.  At the conference no agreement is reached on the tax matters at issue.  The Internal Revenue Service then issues a notice of deficiency.  Upon receiving the notice of deficiency, A discontinues A's administrative efforts and files a petition with the Tax Court.  A's costs incurred in connection with the preparation and filing of a petition with the Tax Court are litigation costs and not reasonable administrative costs. * * *

Example (2).  Assume the same facts as in Example 1 except that after A receives the notice of deficiency, A recontacts Appeals.  Again, A's costs incurred before the administrative proceeding date, the date of the notice of deficiency as set forth in § 301.7430-3(c)(3), are not reasonable administrative costs.  A's costs incurred in recontacting and working with Appeals after the issuance of the notice of deficiency, and up to and including the time of filing of the petition, are reasonable administrative costs.  A's costs incurred in connection with the filing of a petition with the Tax Court are not reasonable administrative costs because those costs are litigation costs. * * *

It appears the October 2002 fees were not in connection with this Court proceeding.  However, petitioner's counsel's review of the notice of determination was in connection with this proceeding since petitioner had to draft its petition in response to the conclusions contained therein.  See sec. 301.7430-4(c)(3)(i), (4), Example (1), Proced. & Admin. Regs.

Stated differently, we believe that petitioner discontinued its administrative appeal efforts upon receipt of the notice of determination.  The examining agent made it clear that she would not forward this matter to the Appeals Office until petitioner submitted a formal written protest.  Petitioner did not file a

formal written protest, and respondent issued the notice of determination.  The record shows that after receiving the notice of determination petitioner's counsel began to prepare its petition.  Costs paid or incurred in connection with the preparation of the petition are litigation costs.  See sec. 301.7430-4(c)(4), Examples (1) and (2), Proced. & Admin. Regs.

E.   Conclusion

To summarize, we award petitioner litigation costs to the extent described herein.  In petitioner's counsel's detailed affidavit, he claimed a total of 118.25 hours worked.  However, we found that 11 of those hours were not in connection with this court proceeding.  Thus, petitioner is entitled to attorney's fees for 107.25 hours at a rate of $150 per hour, totaling $16,087.50.  Additionally, petitioner is entitled to the $265.40 of expenses it paid for court costs, duplication costs, and paralegal fees.

To reflect the foregoing,

An appropriate order and decision will be entered.