KARL HOFSTETTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6739-90.          Filed June 29, 1992.

Karl Hofstetter, pro se.
*Deirdre A. Whittaker* and *Kristine A. Roth,* for respondent.

## OPINION

HALPERN, *Judge:* This case was assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, *Chief Special Trial Judge:* This case was submitted fully stipulated pursuant to Rule 122.

In a notice of deficiency dated November 27, 1989, respondent determined a deficiency in petitioner's Federal income tax for taxable year 1988 in the amount of $4,900. Respondent also determined that petitioner is liable for the addition to tax for negligence under section 6653(a)(1). The issues for decision are: (1) Whether respondent is precluded from determining a deficiency in petitioner's Federal income tax for 1988 as the result of a certificate of compliance being issued in 1989 (the year of petitioner's departure from the United States); (2) whether petitioner must include as part of his total tax liability the alternative minimum tax (AMT) as determined and computed by respondent; and (3) whether petitioner is liable for the addition to tax for negligence.

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

At the time of filing his petition, petitioner resided in Lucerne, Switzerland. At all times in 1988, petitioner was a citizen of Switzerland. Petitioner was a nonresident alien present in the United States from September 1987 through June 1989 under a visa issued to alien professors or teachers. While in the United States, petitioner was employed by the law firm of Chadbourne & Parke in New York City, New York, as a "trainee"/researcher. Petitioner also engaged in unpaid research at Harvard University. Petitioner earned wages in the amount of $43,333 from his employment with Chadbourne & Parke during 1988.

Petitioner timely filed a Form 1040-NR, U.S. Nonresident Alien Income Tax Return, for taxable year 1988. On the return, petitioner reported $43,333 in income. Petitioner claimed exemptions for himself, his spouse, and their two minor children.[2] On Schedule A, petitioner claimed a deduction for State and local income taxes paid in the amount of $199.99, and for unreimbursed employee expenses in the amount of $41,157.36. According to Form 2106, a schedule of employee business expenses attached to the return, the $41,157.36 was composed of travel expenses, and meals and entertainment expenses. Petitioner did not complete line 46 or Form 6251 (relating to the alternative minimum tax). Petitioner computed his taxable income and Federal income tax due as zero.[3]

Petitioner left the United States and returned to Switzerland in June 1989. Prior to his departure, petitioner was required to meet with a representative of the Internal Revenue Service (IRS) to determine whether he satisfied his obligations under the tax laws. An IRS agent reviewed petitioner's 1988 Federal income tax return. As a result of this meeting, petitioner was issued an "Annual Certificate of Compliance" (certificate) on June 16, 1989. The certificate read in total:

---

[2]Petitioner's spouse and children did not travel to the United States with petitioner. Rather, they remained in Switzerland.

[3]With the exemptions claimed, the line 36 amount (taxable income) was <$5,824>. The instructions provide that, if the amount is less than zero, zero should be entered on line 36.

This certifies that Karl Hofstetter has satisfied all United States of America income tax obligations with respect to income received or to be received for the tax year ended December 31, 1989 determined to the extent practicable, based on all information available to me on this date. s/ Gerald R. Esposito, District Director, I.R.S., Boston, Mass.

Following the issuance of the certificate, petitioner was not requested by the IRS to provide any books or records for inspection or examination.

Respondent issued the notice of deficiency for the taxable year 1988 to petitioner on November 27, 1989. Respondent adjusted petitioner's alternative minimum taxable income (AMTI) to $43,333, and allowed the exemption amount of $20,000 (for married filing separate returns). A deficiency was determined in the amount of $4,900 resulting from the alternative minimum tax (AMT) computation. Respondent also determined that petitioner was liable for the addition to tax for negligence pursuant to section 6653(a)(1). Petitioner timely filed a petition challenging the deficiency and addition to tax.

OPINION

The certificate referred to above was issued by the District Director under authority of section 6851(d) and regulations thereunder. Section 6851(d) provides in its entirety:

SEC. 6851(d). DEPARTURE OF ALIEN.—Subject to such exceptions as may, by regulations, be prescribed by the Secretary—

(1) No alien shall depart from the United States unless he first procures from the Secretary a certificate that he has complied with all the obligations imposed upon him by the income tax laws.

(2) Payment of taxes shall not be enforced by any proceedings under the provisions of this section prior to the expiration of the time otherwise allowed for paying such taxes if, in the case of an alien about to depart from the United States, the Secretary determines that the collection of the tax will not be jeopardized by the departure of the alien.

Regulations promulgated under this section address compliance with the statutory requirement. Sec. 1.6851-2, Income Tax Regs. The regulation discusses the conditions under which a certificate will be issued to a departing alien:

(b) Issuance of certificate of compliance.—(1) In general. (i) Upon the departure of an alien required to secure a certificate of compliance under paragraph (a) of this section, the district director shall determine whether the departure of such alien jeopardizes the collection of any income tax for

the current or the preceding taxable year, but the district director may determine that jeopardy does not exist in some cases. If the district director finds that the departure of such an alien results in jeopardy, the taxable period of the alien will be terminated, and the alien will be required to file returns and make payment of tax in accordance with subparagraph (3)(iii) of this paragraph. On the other hand, if the district director finds that the departure of the alien does not result in jeopardy, the alien will be required to file the statement on returns required by subparagraph (2) or (3)(ii) of this paragraph, but will not be required to pay income tax before the usual time for payment.

(ii) The departure of an alien who is a resident of the United States or a possession thereof (or treated as a resident under section 6013(g) or (h)) and who intends to continue such residence (or treatment as a resident) shall be treated as not resulting in jeopardy, and thus not requiring termination of his taxable period, except when the district director has information indicating that the alien intends by such departure to avoid the payment of his income tax. In the case of a nonresident alien (including a resident alien discontinuing residence), the fact that the alien intends to depart from the United States will justify termination of his taxable period unless the alien establishes to the satisfaction of the district director that he intends to return to the United States and that his departure will not jeopardize collection of the tax. The determination of whether the departure of the alien results in jeopardy will be made on examination of all the facts in the case. Evidence tending to establish that jeopardy does not result from the departure of the alien may be provided, for example, by information showing that the alien is engaged in trade or business in the United States or that he leaves sufficient property in the United States to secure payment of his income tax for the taxable year and of any income tax for the preceding year which remains unpaid.

[Sec. 1.6851-2(b)(1), Income Tax Regs.]

Issuance of a certificate does not necessarily constitute an acceptance of the departing alien's returns as filed. The determination as to the issuance of a certificate is based on the question of whether the departure of the taxpayer jeopardizes the collection of income tax for the current or the preceding taxable year. Given that the certificate was issued, we assume that respondent's agents determined that petitioner's departure did not jeopardize the collection of tax. Sec. 1.6851-2(b)(1)(i), Income Tax Regs. Where respondent finds that collection of the tax will not be jeopardized, the statute provides that payment of any tax shall not be enforced by any proceedings prior to the expiration of the time otherwise allowed for paying such taxes. Sec. 6851(d)(2). Thus, the language of section 6851(d) does not restrict the period of time respondent has to determine a deficiency in tax, nor does it

require her to alter her methods or procedures with respect to determining a deficiency in the tax of a departing alien to whom a certificate has been issued. We conclude that respondent's issuance of the certificate, in and of itself, does not preclude her from later determining a deficiency.

Petitioner challenges the deficiency on grounds that the determination thereof violates the Due Process Clause of the Constitution of the United States. U.S. Const. amend. V. Petitioner argues that "Due process requires that the IRS not contradict itself and thereby breach the trust of a taxpayer." As a general matter, the fact that the notice of deficiency sets forth a position "different" from that taken by respondent's agent in issuing the certificate does not violate a taxpayer's right to due process of the laws. As we discussed above, the certificate does not represent a finding on the part of respondent that petitioner's 1988 Form 1040-NR was correct as filed. Accordingly, we reject petitioner's argument that due process prohibits respondent from issuing a notice of deficiency under the facts of this case.[4]

Petitioner argues that respondent should be estopped from determining a deficiency for 1988. Equitable estoppel is a judicial doctrine that "precludes a party from denying his own acts or representations which induced another to act to his detriment." *Graff v. Commissioner,* 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982); see also *Kennedy v. United States,* 965 F.2d 413 (7th Cir. 1992). Estoppel is applied against the Commissioner "with utmost caution and restraint." *Estate of Emerson v. Commissioner,* 67 T.C. 612, 617 (1977). Traditional elements of equitable estoppel include: (1) Conduct constituting a representation of material fact; (2) actual or imputed knowledge of such fact by the representor; (3) ignorance of the fact by the representee; (4) actual or imputed expectation by the representor that the representee will act in reliance upon the representation; (5) actual reliance thereon; and (6) detriment on the part of the representee. *Graff v. Commissioner, supra* at 761. Detrimental reliance on the part of the party seeking to invoke estoppel is a key condition. *Boulez v. Commissioner,* 76 T.C. 209, 215 (1981), affd. 810 F.2d

---

[4]Since petitioner's books and records were not inspected prior to his departure from the United States, the statute restricting respondent's inspection authority is not implicated. See sec. 7605(b).

209 (D.C. Cir. 1987); *Hudock v. Commissioner,* 65 T.C. 351, 363 (1975). The burden of proof is on the party claiming estoppel against the Government. Rule 142(a); *Estate of Emerson v. Commissioner,* 67 T.C. 612, 618 (1977).

Petitioner failed in his burden of proof. The facts in this case do not establish many of the elements necessary for estoppel, including the requisite reliance by petitioner. As the certificate was issued subsequent to the filing of petitioner's 1988 return, he cannot be said to have relied on it in completing the return. Further, petitioner has not presented evidence of detriment caused by any reliance on respondent's actions. *Boulez v. Commissioner, supra* at 215. Accordingly, respondent is not estopped from issuing a notice of deficiency under the facts of this case.

Having reached this conclusion, we address the substantive adjustment determined in the notice of deficiency. Section 55, imposing the AMT, is expressly made applicable to nonresident alien individuals engaged in a trade or business within the United States. Sec. 871(b)(1). Petitioner does not maintain that he is not liable for the AMT. Rather, his argument focuses on the manner in which the amount of the tax is determined and, specifically, the exemption amount used in making that computation. He argues that the statutory scheme, which provides for exemption amounts based upon filing status, discriminates against married nonresident aliens and nonresident aliens who are Swiss nationals. Because his spouse did not have U.S. source income for 1988, and thus was not required to file a U.S. income tax return, petitioner argues that he was deprived of the benefit of the increased exemption amount applied in the case of a joint return filed by married taxpayers. He further argues that this scheme treats him less favorably than single taxpayers, the exemption amount for whom is greater than the amount available in the case of a married taxpayer filing a separate return.

As we have recognized, "the power of Congress in levying taxes is very wide, and where a classification is made of taxpayers that is reasonable, and not merely arbitrary and capricious, the Fifth amendment can not apply." *Barr v. Commissioner,* 51 T.C. 693, 695 (1969) (quoting *Barclay & Co. v. Edwards,* 267 U.S. 442, 450 (1924)). The treatment of which petitioner complains originates in section 6013, which provides

that taxpayers who are husband and wife may file joint Federal income tax returns. Sec. 6013(a). However, a taxpayer whose spouse is a nonresident alien may not file a joint income tax return. Sec. 6013(a)(1). Since petitioner's spouse was a nonresident alien for the tax year in question, petitioner could not file a joint return, but rather was required to file a separate return. This restriction applies equally to all taxpayers whose spouses are nonresident aliens, regardless of their nationality. *Schinasi v. Commissioner,* 53 T.C. 382, 384 (1969). Consequently, petitioner is not discriminated against based upon his national origin. *Black v. Commissioner,* 69 T.C. 505 (1977); *Bhargava v. Commissioner,* T.C. Memo. 1978-197, affd. 603 F.2d 211 (2d Cir. 1979). We note that the sometimes differential treatment afforded taxpayers filing joint returns, vis-à-vis taxpayers filing separate or single returns, has been challenged as unconstitutional on various theories. We have consistently denied such challenges. See *DeMars v. Commissioner,* 79 T.C. 247 (1982) (requirement that married couples aggregate income does not unconstitutionally discriminate against married persons); *Black v. Commissioner,* 69 T.C. 505, 510 (1977) (requirement that child care credit be claimed on joint return not unconstitutional); *Brady v. Commissioner,* T.C. Memo. 1983-163 (classification based on marital status not unconstitutional). Similarly, challenges have been made against other provisions affecting nonresident aliens, also without success. See *Schinasi v. Commissioner, supra* (restriction on filing joint return with nonresident alien spouse not unconstitutional); *Barr v. Commissioner, supra* (restriction on dependency deduction for nonresident aliens not unconstitutional).

In his final argument, petitioner argues that the statute operates in this case to violate provisions of the tax treaty in effect between the United States and Switzerland. Petitioner alleged in his petition to this Court as follows:

the Swiss-US Tax Treaty implies that Swiss persons taxable in the US not be discriminated against if compared to other persons in similar circumstances. The fact that a tax exemption of only US $20,000.00 was granted to petitioner by the IRS, whereby he could have asserted US $40,000.00 as a US-Resident, violates the treaty. This violation is all the more significant, since even non resident-aliens filing as single persons would be treated more favourably, since they could claim an exemption of US $30,000.

The treaty provision on which petitioner bases his argument provides as follows:

(3) The citizens of one of the contracting States shall not, while resident in the other contracting State, be subjected therein to other or more burdensome taxes than are the citizens of such other contracting State residing in its territory. The term "citizens" as used in this Article includes all legal persons, partnerships and associations created or organized under the laws in force in the respective contracting States. In this Article the word "taxes" means taxes of every kind or description, whether Federal, State, cantonal, municipal or communal. [Convention on Double Taxation of Income, May 24, 1951, United States-Switzerland, Art. XVIII, par. (3), 2 U.S.T. (Part 2) 1751, 1761, 1955-2 C.B. 814, 820.]

The tax provisions applied to petitioner in this case do not discriminate against petitioner based upon his status as a citizen of Switzerland. Petitioner's conclusion that, if he were a U.S. resident, he would be able to claim the $40,000 exemption amount allowed in the case of a joint return, is incorrect. Even if petitioner were a U.S. *citizen,* he nevertheless would be required to file as married filing separate since his spouse is a nonresident alien. Sec. 6013(a)(1). As discussed above, this restriction applies to all taxpayers whose spouses are nonresident aliens, regardless of the taxpayers' nationality or citizenship status. Accordingly, this statute does not treat petitioner differently from citizens of the United States under similar circumstances. The fact that section 55(d) provides for different exemption amounts depending on filing status also does not discriminate against Swiss nationals in violation of the tax treaty where the statute is equally applicable to taxpayers who are U.S. citizens and those who are not. Accordingly, we hold that the statutes limiting the exemption amount applicable in computing petitioner's AMT do not violate the United States-Switzerland tax treaty.

Generally, section 55 imposes a tentative minimum tax on the alternative minimum taxable income of a taxpayer which exceeds the applicable exemption amount. Sec. 55(b)(1). The applicable exemption amount is found in section 55(d), the amount of which is determined based on the taxpayer's filing status. A $40,000-exemption amount is available in the case of a joint return or a surviving spouse; a $30,000-exemption amount is available in the case of an unmarried individual; and a $20,000-exemption amount is available in the case of a

married individual filing a separate return. Sec. 55(d)(1)(A)-(C). Petitioner, a married individual, filed a separate return and, hence, is entitled only to the $20,000 exemption amount for purposes of computing the tentative minimum tax. Consequently, we sustain respondent's determination.

Respondent also determined that petitioner is liable for the addition to tax for negligence pursuant to section 6653(a)(1). Negligence is defined as lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. *Neely v. Commissioner,* 85 T.C. 934, 947 (1985). Petitioner has the burden of proof to establish that he is not liable for that addition to tax. Rule 142(a); *Bixby v. Commissioner,* 58 T.C. 757, 791-792 (1972). Petitioner argues that he attempted in good faith to complete his 1988 return.

Based on this record, we conclude that the underpayment was not due to negligence or intentional disregard of rules and regulations. Petitioner otherwise completed his tax return accurately and substantiation of any expenses claimed as deductions on the return is not at issue.

For the foregoing reasons,

> *Decision will be entered for respondent with respect to the deficiency and for petitioner regarding the addition to tax.*