T.C. Summary Opinion 2006-127


UNITED STATES TAX COURT


MICHAEL D. AND CHRISTINE R. ALEXANDER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12445-05S.            Filed August 21, 2006.


Michael D. and Christine R. Alexander, pro sese.

Aimee R. Lobo-Berg, for respondent.


PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $7,368 in petitioners' 1998 Federal income tax. After a concession by petitioners,[1] the issues for decision are: (1) Whether petitioners can deduct interest paid on a home equity loan as an ordinary and necessary business expense; (2) whether petitioners can deduct payments to their son as wage expense; (3) whether petitioners can deduct payments to their daughters as wage expense; and (4) whether respondent is estopped from disallowing petitioners' claimed wage expense deductions.

## Background

Some of the facts have been stipulated and are so found. Petitioners Michael Alexander (Mr. Alexander) and Christine Alexander (Mrs. Alexander) are married and resided in Bandon, Oregon, at the time their petition was filed. Petitioners filed a joint Federal income tax return for the taxable year 1998.

1. The Tree Farm

In 1990, petitioners purchased a parcel of land in Port Orford, Oregon, and began operating a tree farm. Over the next several years, petitioners purchased various equipment for the tree farm, including a tractor, two trailers, and a sprayer. Petitioners paid more than $50,000 for the equipment, which they

---

[1] Petitioners concede $22,815 of expense deductions claimed on Schedule E, Supplemental Income and Loss. The remaining adjustments in respondent's notice of deficiency are computational; therefore, we do not address them.

purchased using credit cards. Petitioners deducted the interest payments on the credit card debt on Schedule F, Profit or Loss From Farming, in prior taxable years.

In or before 1998, petitioners obtained a home equity loan and used the proceeds to pay off the credit card debt incurred in connection with the equipment. Petitioners paid $5,871[2] of interest on the home equity loan in 1998 and claimed that amount as an interest expense deduction on their Schedule F.

Respondent determined that the interest expense was not paid or incurred in connection with the tree farm and, therefore, should not be deducted on Schedule F. Instead, respondent determined that the interest expense should be deducted on Schedule A, Itemized Deductions.

2. The Seamstress Business

In 1998, Mrs. Alexander operated a seamstress business from petitioners' home. During that year petitioners' son, Steven, was a 21-year-old college student in California. When Steven returned home for the summer, he assisted Mrs. Alexander with the seamstress business. Steven performed a variety of tasks such as purchasing supplies, drafting sewing patterns, and cleaning Mrs.

---

[2] All amounts are rounded to the nearest dollar.

Alexander's work space.  Steven worked 378 hours and was paid $4,000, for an hourly rate of $10.58.[3]

Although Steven worked only during the summer, petitioners paid him the $4,000 over the course of the year.  For example, from January through April 1998, petitioners made payments to Steven totaling $481.  Petitioners treated these payments as wage advances.  In November and December 1998, petitioners made payments to Steven totaling $2,526.  Petitioners paid the majority of the $4,000 directly to Steven, although a portion was paid to third parties on his behalf.

Petitioners reported gross receipts of $1,301 for the seamstress business on Schedule C, Profit or Loss From Business, attached to their 1998 tax return.  Petitioners claimed expense deductions totaling $4,666, of which amount $4,000 represented the payments to Steven.  There is no indication that petitioners paid employment taxes on Steven's earnings or that they issued him a Form W-2, Wage and Tax Statement.  There is no indication petitioners filed a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, or Forms 941, Employer's Quarterly Federal Tax Return.  Respondent disallowed the claimed wage expense deduction in full.

---

[3] Petitioners introduced a document they prepared titled "Steven's Hours", which indicates that Steven earned $4,158, or $11 per hour.  Petitioners did not explain the discrepancy between the earnings shown on this document and the amount they actually paid Steven.

3. The Dog-Breeding Business

In 1998, Mrs. Alexander also operated a beagle-breeding business from petitioners' home. Petitioners' three daughters assisted Mrs. Alexander with this business throughout the year. Petitioners' daughters are Margot, who was 17 years old in 1998; JCA, who was 9 years old; and JRA, who was 8 years old.[4] The daughters performed tasks such as cleaning the dogs and the yard in which they exercised, putting up fencing, taking out the garbage, and caring for newborn puppies.

Petitioners credited each daughter with $4,250 of earnings, for a combined total of $12,750. In general, petitioners did not pay their daughters in cash. Instead, petitioners kept a running total of their daughters' earnings. When a daughter wished to make certain purchases, petitioners bought the goods or services for the daughter and deducted the purchase price from the daughter's running total. If the balance of a daughter's running total was insufficient to make a purchase, the daughter was allowed to receive an advance or "go negative."

Petitioners did not require their daughters to pay for basic goods such as food. Their daughters were required, however, to pay for nonessentials such as their share of family ski trips or family trips to Disneyland. The daughters also paid for items such as books, room decorations, toys, movie rentals, and certain

_____

[4] The Court uses only the minor children's initials.

items of clothing.  Petitioners required their children to pay for such items because they wanted to instill a strong work ethic in them.

Petitioners reported gross receipts of $4,900 for the dog-breeding business on a separate Schedule C.  Petitioners claimed expense deductions for the business totaling $16,007, of which amount $12,750 represented payments to their daughters.  There is no indication petitioners issued a Form W-2 to any of their daughters.  Respondent disallowed $12,295 of the claimed wage expense deduction.  It is not clear why respondent allowed the remaining $455.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491(a), the burden of proof as to factual matters shifts to respondent under certain circumstances.  We decide this case without regard to the burden of proof.  Accordingly, we need not decide whether section 7491(a) applies in this case.[5]

A taxpayer who is carrying on a trade or business generally may deduct ordinary and necessary expenses paid or incurred in

---

[5] Petitioners filed a motion to shift the burden of proof to respondent.  Because the burden of proof does not affect the outcome of this case, that motion was denied.

connection with the operation of the business.  Sec. 162(a); see also <u>Commissioner v. Lincoln Sav. & Loan Association</u>, 403 U.S. 345, 352 (1971); <u>FMR Corp. & Subs. v. Commissioner</u>, 110 T.C. 402, 414 (1998).  Respondent does not dispute that the tree farm, seamstress business, and dog-breeding business each qualifies as a trade or business for Federal income tax purposes.  Thus, we address only whether the expenses are ordinary and necessary; and whether they were paid or incurred in connection with the respective businesses.

1.   <u>Interest Expense on the Home Equity Loan</u>

As a preliminary matter, we note that petitioners claimed an interest expense deduction of $5,951, which respondent disallowed in full.  Petitioners introduced a Form 1098, Mortgage Interest Statement, which shows $5,871 of mortgage interest paid. Petitioners did not introduce any evidence with respect to the remaining $80 of the claimed interest expense deduction.  We therefore consider that petitioners have conceded that amount of the adjustment.  See <u>Nicklaus v. Commissioner</u>, 117 T.C. 117, 120 n.4 (2001); <u>Korchak v. Commissioner</u>, T.C. Memo. 2005-244 n.6. Respondent's determination is sustained to the extent of $80.

With respect to the remaining $5,871 of interest expense, the parties agree this amount is deductible.  They disagree whether it is an itemized deduction, or a trade or business expense.  The distinction is important because section 68(a)

reduces itemized deductions once a taxpayer's adjusted gross income (AGI) exceeds the "applicable amount". See <u>Chu v. Commissioner</u>, T.C. Memo. 2005-110. Trade or business expenses are not subject to this limitation. See <u>Bishop v. Commissioner</u>, T.C. Memo. 2001-82 n.5. In addition, trade or business expenses reduce the taxpayer's AGI, thereby reducing the itemized deductions lost under section 68(a). <u>Id.</u>

For petitioners to prevail on this issue, the interest expense must be "properly allocable to a trade or business". See sec. 163(h)(2)(A). Section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), provides the rules for the allocation of interest expense for purposes of section 163(h).[6] <u>Robinson v. Commissioner</u>, 119 T.C. 44, 70 (2002). Debt is allocated to expenditures in accordance with the use of the debt proceeds. Sec. 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000. In general, interest expense accruing on a debt during any period is allocated to expenditures in the same manner as the debt is allocated. <u>Id.</u> Subject to exceptions not relevant here, the allocation is not affected by the use of an interest in any property to secure the repayment of such debt or interest. <u>Id.</u> A trade or business expenditure is an expenditure

---

[6] Temporary regulations are entitled to the same weight as final regulations. See <u>Peterson Marital Trust v. Commissioner</u>, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996); <u>Truck & Equip. Corp. v. Commissioner</u>, 98 T.C. 141, 149 (1992).

in connection with the conduct of any trade or business other than the trade or business of performing services as an employee. Sec. 1.163-8T(b)(7), Temporary Income Tax Regs., 52 Fed. Reg. 25000.

Petitioners incurred credit card debt to purchase equipment for the tree farm. The credit card debt therefore was allocable to a trade or business expenditure. See sec. 1.163-8T(b)(7) and (c)(1), Temporary Income Tax Regs., supra. The temporary regulations provide that to the extent proceeds of any debt (the "replacement debt") are used to repay any portion of a previously existing debt, the replacement debt is allocated to the expenditures to which the repaid debt was allocated. Sec. 1.163-8T(e)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25004. Mr. Alexander credibly testified, and we so find, that petitioners used the proceeds from the home equity loan to repay the credit card debt. The home equity loan therefore is "replacement debt" and the interest accruing thereon is properly allocable to a trade or business expenditure. See sec. 1.163-8T(c)(1), Temporary Income Tax Regs., supra. We hold for petitioners on this issue to the extent of $5,871.

2. Payments to Petitioners' Son

Compensation is deductible as a trade or business expense only if it is (1) reasonable in amount, (2) based on services actually rendered, and (3) paid or incurred. See O'Connor v.

<u>Commissioner</u>, T.C. Memo. 1986-444; sec. 1.162-7(a), Income Tax Regs. Compensation meeting those requirements is deductible even if the employer is a parent and the employee a child. <u>Eller v. Commissioner</u>, 77 T.C. 934, 962 (1981); <u>Hamdi v. Commissioner</u>, T.C. Memo. 1993-38, affd. without published opinion 23 F.3d 407 (6th Cir. 1994). When a familial relationship is involved, however, the Court closely scrutinizes the transaction. <u>Denman v. Commissioner</u>, 48 T.C. 439, 450 (1967); <u>Hamdi v. Commissioner</u>, <u>supra</u>. Section 262(a) generally disallows deductions for personal, living, or family expenses. A normal supposition when payments are made to dependent children or when items are purchased for them is that the money or items are in the nature of support and thus nondeductible under section 262. <u>Holtz v. Commissioner</u>, T.C. Memo. 1982-436.

In deciding whether payments to a child are deductible, we examine all the facts and circumstances. <u>Eller v. Commissioner</u>, <u>supra</u>. Facts that militate against the deductibility of such payments include: (1) Failing to pay employment taxes[7] and file

---

[7] The employment tax sections of the Internal Revenue Code are in subtitle C. Secs. 3111 and 3301 impose taxes on employers under the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA), respectively, based on wages paid to employees. See <u>Images in Motion, Inc. v. Commissioner</u>, T.C. Memo. 2006-19. Sec. 3101 imposes a tax on employees based on their wages paid, which the employer is required to collect under sec. 3102. <u>Id.</u> For purposes of FICA, employment does not include service performed by a child under the age of 18 in the employ of his father or mother. Sec. 3121(b)(3)(A). For

(continued...)

information returns[8] with respect to the child; (2) paying the child a flat amount determined at the beginning of the year that is not based on the services actually performed; (3) a lack of correlation between the dates and amounts of payments and the hours allegedly worked by the child; (4) failing to maintain adequate records of the child's hours worked and amounts earned; and (5) compensating the child for services which are in the nature of routine family chores. See Denman v. Commissioner, supra; O'Connor v. Commissioner, supra; Hable v. Commissioner, T.C. Memo. 1984-485; Furmanski v. Commissioner, T.C. Memo. 1974-47.

There is no indication that petitioners paid employment taxes on the $4,000 they paid Steven. Nor is there any indication petitioners filed a Form 940, 941, or W-2. These facts tend to negate petitioners' contentions that the payments

---

[7](...continued)
purposes of FUTA, employment does not include service performed by a child under the age of 21 in the employ of his father or mother. Sec. 3306(c)(5). Because Steven was 21 years old when he performed services for the seamstress business, secs. 3121(b)(3)(A) and 3306(c)(5) are inapplicable.

[8] The return of the Federal unemployment tax is required to be filed on Form 940. Sec. 601.401(a)(3), Statement of Procedural Rules. All other returns of Federal employment taxes generally are required to be filed on Form 941. Id. In addition, wages paid to an employee are required to be reported on Form W-2. Sec. 1.6041-2(a)(1), Income Tax Regs.

to Steven were intended as and constituted payments for bona fide business employment. See Furmanski v. Commissioner, supra.

Mrs. Alexander testified that she calculated she could pay Steven approximately $4,000 for the summer. Steven therefore was paid a flat amount determined at the beginning of the year rather than an amount based on the services he actually performed. This fact militates against the deductibility of the payments. See Furmanski v. Commissioner, supra.

Petitioners paid Steven the majority of the $4,000 either before he started working in the summer or well after the summer had ended. Thus, there was a lack of correlation between the dates of the payments and the hours Steven worked. This fact also weighs against the deductibility of the payments. See O'Connor v. Commissioner, supra.

Petitioners recorded Steven's hours and wages on a list they kept on their refrigerator. Although the list was not introduced into evidence, the information contained thereon appears to be summarized in the document titled "Steven's Hours". See supra note 3. Petitioners also introduced a document titled "Steve's Summer Work Schedule" (the schedule). The schedule lists a number of tasks and hours worked, such as: (1) "Go get thread and machine needles at fabric store. Pick up bags for vacuum cleaner. Learn how to draw up pattern from measurements. 7 hours"; (2) "Clean sewing room, box up materials and move

downstairs. Prepare to paint. 9 hours"; (3) "Go rent rug shampooer. Shampoo carpet sewing room. 9 hours"; (4) "Clean up and vacuum. 4 hours"; and (5) "Go to San Francisco with mom to help get wedding fabric. 8 hours." Each document indicates that Steven worked 378 hours.

It is not clear when petitioners prepared these documents or whether they accurately reflect Steven's hours, duties, and earnings. Even if we accept the accuracy of the documents, many of the tasks that Steven performed are in the nature of routine family chores such as cleaning, vacuuming, taking out garbage, and accompanying Mrs. Alexander on shopping trips. Such chores are "part of parental training and discipline rather than the services rendered by an employee for an employer." Denman v. Commissioner, supra at 450.

Finally, we note that even if Steven performed tasks that were not routine family chores, the schedule does not separately identify the number of hours he spent on such tasks. Where a taxpayer establishes that he incurred a business expense but cannot prove the amount of the expense, the Court may approximate the amount allowable, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), affg. in part and remanding 11 B.T.A. 743 (1928); King v. Commissioner, T.C. Memo. 2006-112. To apply the Cohan rule, however, the Court must have a reasonable

basis for estimating the amount of the expense.  <u>Vanicek v.
Commissioner</u>, 85 T.C. 731, 742-743 (1985); <u>Keenan v.
Commissioner</u>, T.C. Memo. 2006-45.  Here, the record does not
provide a reasonable basis for estimating the portion of Steven's
compensation, if any, that is deductible.  We therefore do not
apply the <u>Cohan</u> rule.

On the basis of all of the facts and circumstances, we
conclude that the payments to Steven represent personal, living,
or family expenses.  See sec. 262(a).  The tasks that Steven
performed are mostly in the nature of routine family chores.
Petitioners predetermined the amount they would pay him and
failed to observe the formalities of the employee-employer
relationship, such as paying employment taxes, filing information
returns, and paying Steven promptly for the hours he worked.
Thus, petitioners cannot deduct the payments to Steven as wage
expense.  Respondent's determination is sustained.

3.    <u>Payments to Petitioners' Daughters</u>

Petitioners' daughters were under 18 years old in 1998.
Petitioners therefore were not required to pay employment taxes
on their earnings or file Forms 940 and 941.  See secs.
3121(b)(3)(A), 3306(c)(5).  Petitioners were required, however,
to issue their daughters Forms W-2.  See sec. 1.6041-2(a)(1),
Income Tax Regs.  Petitioners' failure to do so undercuts their
assertion that their daughters were bona fide employees of the

dog-breeding business. See Haeder v. Commissioner, T.C. Memo. 2001-7 (taxpayer's failure to issue wife a Form W-2 militated against the deductibility of payments to her); see also Martens v. Commissioner, T.C. Memo. 1990-42, affd. 934 F.2d 319 (4th Cir. 1991).

On the issue of how the daughters' compensation was determined, Mrs. Alexander's testimony was inconsistent. She initially testified that petitioners predetermined they could pay each daughter approximately $4,250 for the year. She later testified, however, that petitioners paid each daughter $7 an hour. It is difficult to believe that each daughter earned exactly $4,250 for the year unless that amount was predetermined. Furthermore, we note that $4,250 was the amount of the standard deduction in 1998. See sec. 63(c); Rev. Proc. 97-57, sec. 3.04, 1997-2 C.B. 584, 586. As a result, each daughter could earn up to $4,250 without having to pay Federal income tax. We conclude that petitioners paid their daughters a flat amount that was determined at the beginning of the year, rather than an hourly rate. This fact weighs against the deductibility of the payments. See Furmanski v. Commissioner, T.C. Memo. 1974-47.

As mentioned supra, the daughters generally did not receive cash from petitioners. In addition, the daughters received advances when they needed to make purchases. We have held that similar arrangements indicate a lack of correlation between the

dates and amounts of payments and the hours allegedly worked by the children. See O'Connor v. Commissioner, T.C. Memo. 1986-444. This arrangement therefore militates against the deductibility of the payments.

As they did with their son, petitioners recorded their daughters' hours and earnings on a list that they kept on the refrigerator. The list was not made part of the record. Petitioners did introduce a summary of each daughter's hours (the summaries), as well as a week-by-week description of each daughter's tasks titled "1998 Timesheet" (the time sheet). The time sheet includes the following entries for Margot, the oldest daughter: (1) "Walk dogs, clean yard and haul garbage. 7.5 hours total for the week"; (2) "Walk dogs, bleach dog bowls, treat dogs for fleas, clip nails, cut grass in beagle yard. 12.75 hours total for the week"; and (3) "Walk dogs, pick up yard, hose kennels, pick up kennels, clean sliding doors. 5 hours total for the week". The time sheet includes similar entries for JCA and JRA.

It is not clear when the summaries and time sheet were prepared, or whether the information reflected in those documents is accurate. Furthermore, as with the tasks that Steven performed, most of the daughters' tasks are in the nature of routine family chores, such as cleaning, mowing the yard, and taking out the garbage. To the extent the daughters performed

tasks other than routine family chores, the time sheet does not provide a reasonable basis for applying the <u>Cohan</u> rule.  See <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743.

On the basis of all of the facts and circumstances, we conclude that the payments to the daughters represent personal, living, or family expenses.  See sec. 262(a).  Petitioners failed to issue Forms W-2 and predetermined the amounts they would pay their daughters.  The daughters' tasks were mostly in the nature of routine family chores, and there was a lack of correlation between the payments they received and the hours they worked.  Accordingly, petitioners cannot deduct the payments to their daughters as wage expense.  Respondent's determination is sustained.

4.  <u>Estoppel</u>

Petitioners contend that at some point before or during 1998, they spoke to an employee of the Internal Revenue Service (IRS) concerning their plan to hire their children as employees.  Petitioners contend the IRS employee indicated that petitioners could deduct the compensation paid to their children.  Petitioners thus appear to argue that respondent is estopped from disallowing their claimed deductions.

Equitable estoppel is a judicial doctrine that precludes a party from denying his own acts or representations which induced another to act to his detriment.  <u>Hofstetter v. Commissioner</u>, 98

T.C. 695, 700 (1992).  It is well settled, however, that the
Commissioner cannot be estopped from correcting a mistake of law,
even where a taxpayer may have relied to his detriment on that
mistake.  Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 59-60
(1995), affd. 140 F.3d 240 (4th Cir. 1998).  An exception exists
only in the rare case where a taxpayer can prove he or she would
suffer an unconscionable injury because of that reliance.  Id. at
60.

The following conditions must be satisfied before equitable
estoppel will be applied against the Government:  (1) A false
representation or wrongful, misleading silence by the party
against whom the opposing party seeks to invoke the doctrine; (2)
an error in a statement of fact and not in an opinion or
statement of law; (3) ignorance of the true facts; (4) reasonable
reliance on the acts or statements of the one against whom
estoppel is claimed; and (5) adverse effects of the acts or
statement of the one against whom estoppel is claimed.  Id.  In
addition, the Court of Appeals for the Ninth Circuit requires the
party seeking to apply the doctrine against the Government to
prove affirmative misconduct.  Miller v. Commissioner, T.C. Memo.
2001-55.

Petitioners have not demonstrated affirmative misconduct by
respondent, nor have they established the other elements
necessary for equitable estoppel to apply.  Accordingly,

respondent is not estopped from disallowing the claimed wage expense deductions.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.