T.C. Summary Opinion 2009-172


UNITED STATES TAX COURT


WAYNE ROBERT RISLEY AND NANETTE RISLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10857-05S.                   Filed November 23, 2009.


<u>Robert L. Risley</u>, for petitioners.

<u>Kevin W. Coy</u> and <u>Kelly R. Morrison-Lee</u>, for respondent.


LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine respondent's determination of deficiencies in and
accuracy-related penalties related to their joint 2001, 2002, and
2003 Federal income tax returns (2001 return, 2002 return, and
2003 return, respectively; collectively, subject returns).

Petitioners filed their petition pursuant to the provisions of section 7463.[1]

This case is now before the Court on respondent's motion for summary judgment.  We hold that respondent is entitled to summary judgment and shall enter a decision accordingly.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

## Background

### I.  Preliminaries

Petitioners are husband and wife.  They resided in California when their petition was filed.  They filed the subject returns jointly.

### II.  Tax Shelter

Petitioners participated in a fraudulent tax shelter (tax shelter) promoted and sold by the National Audit Defense Network (NADN).  The NADN advertised itself as a conglomerate of former Internal Revenue Service agents, enrolled agents, certified public accountants, and tax attorneys who could help U.S. taxpayers pay no Federal income tax.  The NADN informed petitioners that they could qualify for significant tax benefits by forming a Web site and then paying the NADN to modify the Web

---

[1]Section references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

site to comply with the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 302(a), 104 Stat. 355, codified at 42 U.S.C. sec. 12182(a) (2006). The ADA generally provides that any person who owns, leases, or operates a place of public accommodation shall not discriminate against disabled individuals in the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of the place of public accommodation.

The NADN informed petitioners that they had to pay the NADN $2,495 and issue to the NADN a $7,980 promissory note as to each year in which they wanted to participate in the tax shelter. Payments on a note were to be made from the revenue generated by the Web site or, if no revenue was generated, 8 years after the note's making. The NADN informed petitioners that they could claim a $5,000 tax credit pursuant to section 44 and deduct at least $5,475 of business expenses pursuant to section 162 for each year that they participated in the tax shelter. The NADN advised petitioners that it was not providing them (nor was it engaged in the rendering of) any legal, accounting, or other professional service and that they should retain a "competent professional" if they wanted any legal advice or other expert assistance with respect to the tax shelter.

Petitioners paid the NADN $2,495 in each subject year to participate in the tax shelter. Petitioners also signed at least

one $7,980 promissory note payable to the NADN or to an affiliate thereof.

III. <u>Subject Returns</u>

A. <u>2001 Return</u>

Petitioners prepared their 2001 return themselves. Petitioners attached a 2001 Schedule C, Profit or Loss From Business (Sole Proprietorship), to their 2001 return reporting that petitioner Wayne R. Risley (Mr. Risley) operated an "Electronic Shipping and Information Service" business during 2001. The only item of income or expense reported on the 2001 Schedule C was a $5,475 expense identified as "Excess expenditures for modifications made for disabled access to business". Petitioners also attached a 2001 Form 8826, Disabled Access Credit, to their 2001 return. The 2001 Form 8826 reported that petitioners paid $10,475 in total eligible access expenditures during 2001 and were claiming a $5,000 disabled access credit for 2001. Petitioners claimed the $5,000 credit on their 2001 return.

B. <u>2002 Return</u>

Petitioners prepared their 2002 return themselves. Petitioners attached a 2002 Schedule C to their 2002 return reporting that Mr. Risley operated an "Apple Electronic Shopping & Information" business during 2002. The only item of income or expense reported on the 2002 Schedule C was a $5,475 expense

identified as "Excess expenditures for modifications made for [sic]". Petitioners also attached a 2002 Form 8826 to their 2002 return. The 2002 Form 8826 reported that petitioners paid $10,475 in total eligible access expenditures during 2002, that petitioners had a current year disabled access credit of $5,000, and that petitioners were claiming $611 of the $5,000 as an allowable disabled access credit for 2002. Petitioners claimed the $611 credit on their 2002 return.

C. <u>2003 Return</u>

Petitioners' 2003 return was prepared by H&R Block. Petitioners' 2003 return did not report any income or deductions as to the tax shelter. Petitioners attached a 2003 Form 8826 to their 2003 return. The 2003 Form 8826 reported that petitioners paid $5,000 in total eligible access expenditures during 2003 and that petitioners were claiming a $2,375 disabled access credit for 2003. Petitioners claimed the $2,375 credit on their 2003 return.

IV. <u>Notice of Deficiency</u>

Respondent issued petitioners a notice of deficiency as to the subject returns. Respondent determined in the notice of deficiency that petitioners were not entitled to any of the deductions or credits claimed as to the tax shelter. For the respective years, respondent determined deficiencies of $6,513,

$2,776, and $2,712.[2]  Respondent also determined accuracy-related penalties under section 6662(a) and (b) of $1,303, $555, and $542, respectively, for negligence or disregard of rules and regulations.

## Discussion

### I.  Standard for Summary Judgment

Summary judgment may be granted with respect to any part of the legal issues in controversy if the record before the Court shows no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  See Rule 121(a) and (b); Craig v. Commissioner, 119 T.C. 252, 259-260 (2002). Respondent bears the burden of proving the absence of any genuine issue of material fact, and all facts are viewed in the light most favorable to petitioners.  See Craig v. Commissioner, supra at 260.  Petitioners, however, must do more than merely allege or deny facts; they must set forth "specific facts showing that there is a genuine issue for trial."  See Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Petitioners have failed to raise any genuine issue of material fact under that standard, and this case is ripe for summary judgment.

---

[2]These deficiencies total $11,664, and petitioners' cash expenditures as to the tax shelter total $7,485 ($2,495 x 3). Petitioners reportedly realized an economic gain of $4,179 from the tax shelter ($11,664 - $7,485 = $4,179).

## II. Deficiencies

Petitioners make no claim that sections 44 and 162 actually allow them to deduct or credit the items that they reported as to the tax shelter. Cf. Good v. Commissioner, T.C. Memo. 2008-245 (holding on the merits that the taxpayers were not entitled to the section 162 expenses and disabled business credits reported as to the tax shelter). Petitioners' primary argument in challenging respondent's determination of the deficiencies is that respondent is equitably estopped from assessing against them any amount relating to the tax shelter. We disagree. Equitable estoppel is a judicial doctrine that precludes a party from denying his or her acts or representations which induced another to act to his or her detriment. See Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). The following requirements must be satisfied where, as here, equitable estoppel is asserted against the Commissioner: (1) A false representation by the Commissioner or his wrongful, misleading silence; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts; (4) a taxpayer's reasonable reliance on the Commissioner's acts or statements; and (5) adverse effects of the Commissioner's acts or statement. See Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 59-60 (1995), affd. 140 F.3d 240 (4th Cir. 1998). Petitioners' failure to establish any one of these

five requirements means that their claim of equitable estopped must fail as well.

Petitioners have failed to establish on the part of respondent either a false representation or a wrongful, misleading silence as to the tax shelter.[3]  To that end, we are unable to find as to the tax shelter that respondent made any representation (let alone any misrepresentation) to petitioners or otherwise wrongfully concealed from petitioners any material fact.  Instead, the record establishes (and we so find) that respondent had no contact with petitioners as to the tax shelter before his audit of the subject returns and that petitioners invested in the tax shelter separate and apart from any action taken by respondent.

Petitioners argue that the statements of the the NADN's workforce are imputed to respondent to the extent that those workers were registered with the Internal Revenue Service as enrolled agents or tax preparers.  Petitioners also argue that the tax shelter is imputed to respondent because the NADN advertised that it employed those workers as well as former Internal Revenue Service employees.  We disagree on both counts. The record does not establish, nor do petitioners claim, that any of the NADN's workers also were working for the Internal Revenue

_____

[3]Given this failure, we need not and do not address any of the other four requirements of equitable estoppel.

Service at the same time.  Moreover, the mere fact that a former employee of the Internal Revenue Service, or an individual registered with the Internal Revenue Service as an enrolled agent or a tax preparer, may have been affiliated with the NADN (and/or the tax shelter) does not estop respondent from challenging the legitimacy of the tax shelter.  See Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957) (holding that the Commissioner is usually not estopped from correcting retroactively a mistake of law); see also Martin's Auto Trimming, Inc. v. Riddell, 283 F.2d 503, 506 (9th Cir. 1960); Schwalbach v. Commissioner, 111 T.C. 215, 228 n.4 (1998); Fortugno v. Commissioner, 41 T.C. 316, 323-324 (1963), affd. 353 F.2d 429 (3d Cir. 1965).  Nor do we believe, as petitioners argued, that respondent was sufficiently aware of the impropriety of the tax shelter through petitioners' filing of their 2001 return so that he is estopped from challenging any of the amounts that petitioners later claimed as to the tax shelters for 2002 and 2003.

Petitioners also argue that the Government should bear the loss of any Federal income taxes owed by them as to the tax shelter because respondent failed to inform petitioners that the tax shelter was a "fraud" and is in a better position than they to recover the $7,485 that they paid to the NADN.  We disagree. While petitioners consider it inequitable that they have to pay

taxes as to the tax shelter when they have paid $7,485 to the NADN for what they now consider to be a worthless investment, we know of no reason the Government should act as an insurer of that investment. Nor do we agree with petitioners that they are entitled for the subject years to deduct the $7,485 as a theft loss under section 165. While section 165 lets an individual deduct a theft loss in the year during which the individual discovers the loss, see sec. 165(a), (c)(3), (e), the record does not establish that petitioners discovered any such theft loss during the subject years.

We hold that respondent is not estopped from disallowing the claimed amounts. Accordingly, we sustain respondent's determination of the deficiencies.

III. Accuracy-Related Penalties

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) and (b)(1). Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence or disregard of rules or regulations. Negligence connotes a lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348 (9th Cir. 1991). An accuracy-related penalty is not applicable to any portion of an underpayment to the extent that

the taxpayer had reasonable cause for that portion and acted in good faith with respect thereto. See sec. 6664(c)(1).

Respondent bears the burden of production with respect to the applicability of the accuracy-related penalties. See sec. 7491(c). That burden requires that respondent produce sufficient evidence that it is appropriate to impose the accuracy-related penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent meets this burden, the burden of proof falls upon petitioners. See id. at 447. Petitioners may carry their burden by proving that they were not negligent; i.e., that they made a reasonable attempt to comply with the provisions of the Internal Revenue Code and were not careless, reckless, or in intentional disregard of rules or regulations. See sec. 6662(c). Alternatively, petitioners may establish that their underpayment was attributable to reasonable cause and their acting in good faith. See sec. 6664(c)(1).

We conclude that respondent has met his burden of production and that petitioners have failed to carry their burden of proof. The record establishes that petitioners claimed significant amounts of tax benefits to which they neither were entitled nor had a reasonable claim. The record does not establish that petitioners made a reasonable attempt to comply with the provisions of the Internal Revenue Code, that petitioners' underpayment was attributable to reasonable cause, or that

petitioners acted in good faith as to the underpayment. Petitioners claim that the subject returns were prepared and reviewed by the NADN and that they reasonably relied on the NADN to prepare those returns correctly.  We reject that claim as factually and legally incorrect.  As a point of fact, petitioners prepared their 2001 and 2002 returns themselves; H&R Block prepared their 2003 return; and the NADN informed petitioners that it was not providing them with any legal or other professional service and that they should retain a competent professional if they wanted any legal advice or other expert assistance with respect to the tax shelter.  As a point of law, any such claimed reliance upon the NADN (if it in fact had occurred) would not be reasonable in the setting of this case given that the NADN was the tax shelter's promoter.  See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

We hold that petitioners are liable for the accuracy-related penalties respondent determined.  Accordingly, we sustain respondent's determination as to those penalties.

IV.  Conclusion

We have considered all of petitioners' contentions and have concluded that those contentions not discussed herein are without merit.  To reflect the foregoing,

An appropriate order and decision will be entered for respondent.