T.C. Memo. 2012-276

UNITED STATES TAX COURT

MICHAEL GIGLIOBIANCO AND MARY GIGLIOBIANCO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22205-10.                         Filed September 27, 2012.

Andrew Ira Panken, for petitioners.

Michael S. Coravos, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined the following deficiencies in,

addition under section 6651(a)(1)[1] to, and accuracy-related penalties under section

6662(a) on petitioners' Federal income tax (tax):

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for
the years at issue.  All Rule references are to the Tax Court Rules of Practice and
Procedure.

| Year | Deficiency | [*2]Addition to Tax Under Sec. 6651(a)(1) | Accuracy-Related Penalty Under Sec. 6662(a) |
|------|-----------|------------------------------------|---------------------------------------|
| 2007 | $6,808 | $460.50 | $1,361.60 |
| 2008 | 23,016 | --- | 4,603.20 |

The issues remaining for decision are:

(1) Are petitioners entitled to deduct certain claimed business expenses of $25,122 and $43,423 for their taxable years 2007 and 2008, respectively? We hold that they are not except to the extent stated herein.

(2) Are petitioners entitled to deduct a claimed nonpassive loss of $15,039 for their taxable year 2007? We hold that they are not.

(3) Are petitioners liable for their taxable year 2007 for the addition to tax under section 6651(a)(1)? We hold that they are.

(4) Are petitioners liable for each of their taxable years 2007 and 2008 for the accuracy-related penalty under section 6662(a)? We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioners filed the petition, they resided in New York.

During 2007 and 2008, petitioner Mary Gigliobianco (Ms. Gigliobianco) worked for Sing Along Family Childcare (Sing Along). During those years, Ms.

[*3] Gigliobianco received wage income from Sing Along of $12,600 and $9,806, respectively.

In 1995, petitioner Michael Gigliobianco (Mr. Gigliobianco) retired from the police force. During each of the years 2007 and 2008, Mr. Gigliobianco received taxable pension distributions totaling $63,027. During 2007, Mr. Gigliobianco also worked as a security guard and received wage income of $15,117 from M&M Security, Inc.

In 1980, Mr. Gigliobianco obtained a private pilot's license. In 1995, after he retired from the police force, Mr. Gigliobianco obtained a commercial pilot's license, and later that same year he obtained a flight instructor's license. During the period starting in 1980, when Mr. Gigliobianco obtained a private pilot's license, until 1995, when he obtained a commercial pilot's license, he flew airplanes exclusively for personal purposes. After he obtained a commercial pilot's license in 1995, Mr. Gigliobianco generated income as a professional pilot until he retired from flying in 2010.

In 2003, MicNic Aviation, Inc. (MicNic), in which Mr. Gigliobianco held a 100-percent ownership interest, purchased a 1977 Mooney M20J airplane (Mooney). MicNic financed the purchase of the Mooney by borrowing $69,644.28 from the Putnam County National Bank of Carmel, New York. Mr.

[*4] Gigliobianco, both in his personal capacity and as the president of MicNic, signed the document titled "Promissory Note/Demand/Security Agreement" relating to that borrowing. In 2007, ownership of the Mooney was transferred to Mickes Aviation, a sole proprietorship of Mr. Gigliobianco.

During 2007 and 2008, Mr. Gigliobianco flew the Mooney, used the flight instruments with which the Mooney was equipped, and performed various aerial maneuvers with that aircraft.

During 2007 and 2008, Mr. Gigliobianco, an independent contractor, worked as a licensed flight instructor for Arrow Aviation, LLC (Arrow). Arrow operated a flight school near the airport in Danbury, Connecticut, and also was in the business of renting airplanes for approximately $200 an hour for use in flight and instrument training. As a flight instructor for Arrow, Mr. Gigliobianco would have been entitled to receive about a 10 percent discount from Arrow if he had decided to rent one of its airplanes. Thus, Mr. Gigliobianco could have rented an airplane from Arrow for approximately $180 an hour.

In order for a pilot to maintain a license as a flight instructor during 2007 and 2008, the Federal Aviation Administration (FAA) required that every other year the pilot take a two-hour flight examination or complete a training course. Mr. Gigliobianco chose to renew his flight instructor's license during 2007 by

[*5] taking a training course for which he paid approximately $250. In order to maintain his position as a flight instructor during 2007 and 2008, Arrow did not require Mr. Gigliobianco to do anything more, e.g., own an airplane or obtain additional flight training.

When Mr. Gigliobianco gave flight lessons to Arrow's clients, that company required him to use an airplane that it owned and insured. In return for his services as a flight instructor, Mr. Gigliobianco received from Arrow compensation of $5,980 and $38,702 during 2007 and 2008, respectively. During 2007 and 2008, Mr. Gigliobianco gave flight lessons exclusively to Arrow's clients and received compensation as a flight instructor only from Arrow.

In 2003, P.I.C., Inc. (PIC), an S corporation in which Mr. Gigliobianco owned 50 percent of the stock, purchased a 1979 Piper PA44-180 Seminole airplane (Piper) for the purpose of operating an airline charter business. PIC financed the purchase of the Piper by borrowing $62,650 from Cornerstone Bank in Stamford, Connecticut. Mr. Gigliobianco, as vice president of PIC, signed the document titled "Aircraft Loan Contract" relating to that borrowing. PIC stopped operating in 2008.[2]

---

[2]The record does not establish whether PIC disposed of the Piper after it stopped operating.

[*6]   On June 10, 2008, and April 15, 2009, respectively, petitioners filed joint tax returns for their taxable years 2007 (2007 return) and 2008 (2008 return).[3] Petitioners included Schedule C, Profit or Loss From Business, for a business identified in that schedule as Mickes Aviation with each of the 2007 return (2007 Schedule C) and the 2008 return (2008 Schedule C).  Petitioners also included Schedule E, Supplemental Income and Loss, with the 2007 return (2007 Schedule E).  Dennis P. Clark signed petitioners' 2007 return as a paid preparer.[4]

In the 2007 Schedule C, petitioners reported gross receipts of $5,980 and claimed expenses of $25,122 (2007 claimed Schedule C expenses).  The 2007 claimed Schedule C expenses consisted of the following claimed expenses:

---

[3]The copy of the 2008 return that the parties stipulated into the record in this case is incomplete in that there are certain pages missing from the copy of that return.

[4]The record does not establish whether a paid preparer prepared and signed petitioners' 2008 return.

| [*7] Expense | Amount |
|---|---|
| Depreciation and sec. 179 expense deduction | $1,120 |
| Insurance | 1,383 |
| Interest | 6,100 |
| Repairs and maintenance | 9,535 |
| Other | 6,984 |
| Total | 25,122 |

In the 2007 Schedule E, petitioners reported a nonpassive loss of $15,039 (2007 claimed Schedule E loss) from PIC. That loss was shown in Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc., that Mr. Gigliobianco received from PIC for his taxable year 2007 and was equal to 50 percent of the loss of $30,078 that PIC claimed (PIC loss) in Form 1120S, U.S. Income Tax Return for an S Corporation, that PIC filed for its taxable year 2007 (PIC's 2007 Form 1120S).[5] The PIC loss was calculated as the difference between the total income of $2,000 reported and the total deductions of $32,078 claimed in that form. Those claimed total deductions consisted of the following deductions that PIC claimed in PIC's 2007 Form 1120S:

---

[5]As discussed above, Mr. Gigliobianco owned 50 percent of the stock of PIC.

| [*8] Deduction | Amount |
|---|---|
| Repairs and maintenance | $9,700 |
| Interest | 8,690 |
| Depreciation not claimed on Schedule A or elsewhere on return | 8,322 |
| Other deductions[1] | 5,366 |
| Total | 32,078 |

[1]The record does not establish the nature of any of the claimed "Other deductions".

In the 2008 Schedule C, petitioners reported gross receipts of $38,702 and expenses of $43,423 (2008 claimed Schedule C expenses). The 2008 claimed Schedule C expenses consisted of the following claimed expenses:

| Expense | Amount |
|---|---|
| Advertising | $125 |
| Car and truck | 2,353 |
| Contract labor | 400 |
| Depreciation and section 179 expense deduction | 1,736 |
| Insurance | 3,343 |
| Interest | 4,320 |
| Legal and professional services | 125 |
| Rent or lease | 4,213 |

| | |
|---|---|
| **[*9]** Repairs and maintenance | 9,958 |
| Supplies | 4,485 |
| Taxes and licenses | 350 |
| Travel, meals, and entertainment | 520 |
| Other | <u>11,495</u> |
| Total | 43,423 |

Respondent issued to petitioners a notice of deficiency (notice) with respect to their taxable years 2007 and 2008.  In that notice, respondent determined to disallow the 2007 claimed Schedule C expenses of $25,122 and the 2008 claimed Schedule C expenses of $43,423.  Respondent also determined in the notice to disallow the 2007 claimed Schedule E loss of $15,039.  In addition, respondent determined in the notice that petitioners are liable (1) for the addition to tax under section 6651(a)(1) for their taxable year 2007 and (2) for the accuracy-related penalty under section 6662(a) for each of their taxable years 2007 and 2008.

On October 7, 2010, petitioners filed a petition commencing this case.

On February 7, 2011, the Internal Revenue Service (IRS) issued two separate letters to petitioners with respect to their taxable years 2007 and 2008, respectively (IRS letters).  The letter with respect to petitioners' taxable year 2007 (2007 IRS letter) stated in pertinent part:  "Based on the information you provided,

[*10] we changed your 2007 Form 1040 to correct your adjustments to income. We changed the civil penalty amount that we previously charged. As a result, you owe $0.00." That letter also contained the following summary:

<u>Summary</u>

| | |
|---|---|
| Account balance before this change | $9,683.11 |
| Decrease in tax | -6,808.00 |
| Decrease in accuracy-related penalty on underpayments penalty | -1,361.60 |
| Decrease in failure-to-file penalty | -460.50 |
| Decrease in interest | <u>-1,053.01</u> |
| Amount due | $0.00 |

The letter with respect to petitioners' taxable year 2008 (2008 IRS letter) stated in pertinent part: "Based on the information you provided, we changed your 2008 Form 1040 to correct your adjustments to income. We changed the civil penalty amount that we previously charged. As a result, you owe $0.00." That letter also contained the following summary:

**[*11]** <u>Summary</u>

| | |
|---|---|
| Account balance before this change | $29,450.97 |
| Decrease in tax | -23,016.00 |
| Decrease in accuracy-related penalty on underpayments penalty | -4,603.20 |
| Decrease in interest | <u>-1,831.77</u> |
| Amount due | $0.00 |

Both the 2007 IRS letter and the 2008 IRS letter stated in pertinent part: "If you agree with the changes we made You don't need to respond to this notice."

OPINION

Petitioners bear the burden of establishing that the determinations that remain at issue are erroneous. <u>See</u> Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction claimed. <u>See</u> <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required petitioners to maintain records sufficient to establish the amount of any deduction claimed. <u>See</u> sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

[*12] At trial, petitioners called Mr. Gigliobianco as a witness. We found Mr. Gigliobianco's testimony to be in certain material respects not credible, vague, self-serving, uncorroborated, and/or contradicted by certain other evidence in the record. We shall not rely on the testimony of Mr. Gigliobianco to establish petitioners' position with respect to each of the issues that remain for decision. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Claimed Schedule C Expenses

It is petitioners' position that they are entitled to deduct under section 162(a) the 2007 claimed Schedule C expenses of $25,122 and the 2008 claimed Schedule C expenses of $43,423.[6] Respondent disagrees.

Before turning to petitioners' position, we shall summarize the requirements of section 162(a). Section 162(a) generally allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the

---

[6]At trial and on brief, petitioners also take the position that they are entitled to respective deductions for their taxable years 2007 and 2008 for "Depreciation and section 179 expense" in amounts greater than they claimed in the 2007 Schedule C and the 2008 Schedule C. Petitioners presented no reliable evidence, and advance no arguments under secs. 167 and 179, in support of their position that they are entitled to any deductions for 2007 and 2008 for "Depreciation and section 179 expense". Our discussion below addresses only the respective Schedule C deductions for petitioners' taxable years 2007 and 2008 to which they claim they are entitled under sec. 162(a).

**[\*13]** requirements for deductibility under section 162(a) is a question of fact. See
Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

We shall also summarize the requirements of section 274(d).  That is because,
even though petitioners advance no argument under section 274(d), certain of the
2008 claimed Schedule C expenses are subject to that section, i.e., certain claimed
expenses for meals while Mr. Gigliobianco was traveling and for a passenger
automobile.  For certain expenses otherwise deductible under section 162(a), such
as expenses for meals while traveling away from home, see sec. 274(d)(1), and
expenses for a passenger automobile that is "listed property", see sec. 280F(d)(4), a
taxpayer must also satisfy the substantiation requirements set forth in section 274(d)
before such expenses will be allowed as deductions.

As pertinent here, in order to satisfy the substantiation requirements in
section 274(d) the elements that a taxpayer must establish with respect to claimed
business expenses for meals while traveling away from home are:  (1) the amount
of each expenditure, except that in the case of claimed business expenses for meals
while traveling away from home the daily cost of the traveler's own breakfast,
lunch, and dinner may be aggregated; (2) the time of each expenditure, i.e., the date
of departure and return for each trip away from home and the number of days
away from home spent on business; (3) the place of each expenditure, i.e., the

**[*14]** destination or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each expenditure, i.e., the business reason for the travel or the nature of the business benefit derived or expected to be derived as a result of the travel. See sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985).

As pertinent here, in order to satisfy the substantiation requirements in section 274(d) the elements that a taxpayer must establish with respect to business expenses for a passenger automobile that is "listed property" under section 280F(d)(4) are: (1)(a) the amount of each separate expenditure with respect to the automobile and (b) the amount of each business use based on mileage; (2) the time, i.e., the date of each expenditure or use with respect to the automobile; and (3) the business purpose for each expenditure or use with respect to the automobile. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

We address now petitioners' position that they are entitled to deduct under section 162(a) the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses. In support of that position, petitioners rely on the testimony of Mr. Gigliobianco. As indicated above, we are unwilling to rely on his testimony. Petitioners also rely on certain documents that the parties stipulated

**[*15]** (stipulated documents). We find those stipulated documents to be deficient in certain material respects in supporting petitioners' position that they are entitled to deduct under section 162(a) the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses.

Certain of the stipulated documents are certain invoices or similar documents (collectively, aircraft documents) that show certain expenses with respect to the Mooney as well as an unidentified aircraft. An illustration of a deficiency in the aircraft documents is that they do not establish whether the amounts shown thereon were paid, and, if so, who paid them.

Certain of the stipulated documents are certain receipts for certain fuel, some of which appear to pertain to certain fuel for an automobile or similar vehicle and some of which appear to pertain to certain fuel for an aircraft (collectively, fuel receipts). An illustration of a deficiency in the fuel receipts is that they do not establish the purpose for which the automobile or the aircraft for which the fuel was purchased was used.

Certain of the stipulated documents are certain receipts for certain meals from various restaurants (meal receipts). An illustration of a deficiency in the meal receipts is that they do not establish the business purpose for any of those meals.

**[*16]** On the record before us, we are unwilling to rely on the stipulated documents to establish that petitioners are entitled to deduct under section 162(a) the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses.

Petitioners acknowledge that, except for the stipulated documents, they have no documentation (petitioners' claimed documentation) supporting their position that they are entitled to deduct under section 162(a) the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses. Petitioners contend that they do not have petitioners' claimed documentation because they destroyed that documentation after having received, and relied on, the IRS letters.[7] In reliance on that contention, petitioners advance the following argument (petitioners' equitable estoppel argument): "The Respondent now attempts to benefit from its own error in its position that Petitioner has failed to meet his burden of proof due to a lack of records which were destroyed solely because of the language in Respondent's Notices [IRS letters]. The Respondent should be estopped from taking advantage

---

[7]In his opening statement at trial, respondent's counsel stated as follows with respect to the IRS letters: "My understanding is that these [IRS letters] * * * were form letters that were produced as a result of an erroneous assessment. And after the agent sent out the statutory notice of deficiency, the Service inappropriately assessed the deficiencies and when this came to the appeals officer's attention, he put out a request to abate those".

**[\*17]** of its own error as detrimental reliance by the opposing party is at the core of estoppel."

It is our understanding that petitioners are arguing that they should not be penalized for not having the records that they claim would establish their entitlement to deduct the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses because they destroyed petitioners' claimed documentation after they received, and relied on, the IRS letters. We believe that petitioners misunderstand and misapply the doctrine of equitable estoppel.[8] In any event, on the record before us, we conclude that the doctrine of equitable estoppel does not apply here.

---

[8]"Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'" Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), aff'd, 673 F.2d 784 (5th Cir. 1982)). That doctrine is applied against the Commissioner of Internal Revenue (Commissioner) "with the utmost caution and restraint." Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), aff'd, 810 F.2d 209 (D.C. Cir. 1987). Application of the doctrine of equitable estoppel requires the establishment of the following: (1) a false representation or wrongful, misleading silence by the party against whom estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts by the taxpayer; (4) reasonable reliance by the taxpayer on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statements of the one against whom estoppel is claimed. Wilkins v. Commissioner, 120 T.C. 109, 112 (2003); Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), aff'd, 140 F.3d 240 (4th Cir. 1998).

[**\*18**] In support of petitioners' equitable estoppel argument, petitioners rely principally on the testimony of Mr. Gigliobianco. We do not believe Mr. Gigliobianco's testimony that, except for the stipulated documents, petitioners destroyed all of petitioners' claimed documentation only because of, and after they received, the IRS letters. Mr. Gigliobianco testified that he informed petitioners' "accountant"[9] of petitioners' receipt of the IRS letters and that the "accountant" told him to destroy the records pertaining to the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses if petitioners did not hear anything further from the IRS within a "month or so". Petitioners did not call as a witness at the trial in this case that "accountant". Nor did petitioners explain why they failed to call their "accountant" to testify. We presume that the testimony of any such "accountant" of petitioners would not have been favorable to their position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).

It is also significant that although petitioners' counsel of record had entered an appearance on behalf of petitioners in the instant case before they received the IRS letters, Mr. Gigliobianco testified that he did not consult that counsel after

_____

[9]The record does not establish (1) the identity of the individual with whom Mr. Gigliobianco purportedly spoke about petitioners' receipt of the IRS letters or (2) that any such individual is an accountant.

[*19] petitioners received those IRS letters and before they contend they destroyed all of petitioners' claimed documentation, except the stipulated documents. We are incredulous that Mr. Gigliobianco would not have done so.

On the record before us, we find that petitioners have failed to establish that the doctrine of equitable estoppel applies here.

On the record before us, we find that petitioners have failed to carry their burden of establishing that pursuant to section 162(a) they paid or incurred during their taxable years 2007 and 2008, respectively, any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses in carrying on Mr. Gigliobianco's business as a licensed flight instructor.

Assuming arguendo that petitioners had carried their burden of establishing that pursuant to section 162(a) they paid or incurred during their taxable years 2007 and 2008, respectively, any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses in carrying on Mr. Gigliobianco's business as a licensed flight instructor, they would nonetheless be required to establish that those expenses are ordinary and necessary expenses within the meaning of section 162(a) in carrying on that business.

We turn first to whether the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses are ordinary expenses within the meaning of

[*20] section 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor. In general, an expense is ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose. See Deputy v. du Pont, 308 U.S. 488, 495 (1940).

Petitioners argue that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses relating to the Mooney[10] are ordinary expenses within the meaning of section 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor because (1) "a flight instructor * * * would not touch the controls of an airplane while teaching a student to perform maneuvers" and (2) it is "ordinary, usual and customary for that flight instructor to purchase and maintain his own plane" in order to maintain "proficiency with maneuvers and controls".

Petitioners offered no reliable evidence that it is normal, usual, or customary for a flight instructor in the business of giving flight lessons as an independent

---

[10]Because petitioners' argument that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses are ordinary and necessary expenses under sec. 162(a) focuses only on the expenses relating to the Mooney, we focus our analysis only on those expenses. Thus, we do not address the respective expenses claimed as part of the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses relating to advertising, cars and trucks, contract labor, legal and professional services, rent or lease, supplies, taxes and licenses, meals and entertainment, and business telephone.

[*21] contractor for a flight school to purchase and maintain an airplane in order to maintain proficiency with maneuvers and controls. In order for a pilot to maintain a license as a flight instructor during 2007 and 2008, the FAA required that every other year the pilot take a two-hour flight examination or complete a training course. Mr. Gigliobianco testified that he believed (1) that those FAA requirements were inadequate and (2) that he should fly 150 hours each year in order to maintain proficiency as a pilot in maneuvering and controlling an airplane. Petitioners offered no reliable evidence that Mr. Gigliobianco, a pilot with more than 25 years of flying experience, needed 150 hours of flying time each year in order to maintain proficiency as a pilot in maneuvering and controlling an airplane. Moreover, the record does not establish that during each of the years 2007 and 2008 Mr. Gigliobianco even met his own 150-hour flying requirement. According to certain purported flight logs that Mr. Gigliobianco prepared with respect to the Mooney for 2007 and 2008 (Mooney purported flight logs), he flew that airplane a total of 106.6 hours during 2007 and a total of 133.3 hours during 2008.[11] In addition, Mr. Gigliobianco testified that during each of

---

[11]Although the entries in the Mooney purported flight log that Mr. Gigliobianco prepared for 2008 are legible with respect to the numbers of hours that Mr. Gigliobianco recorded as flight hours, the entries in that log regarding the respective purposes for those flight hours are not legible in certain respects.

**[\*22]** the years 2007 and 2008 he used the Mooney for the exclusive purpose of obtaining the flight hours that he believed he needed in order to "stay safe". However, certain entries in the Mooney purported flight logs indicate that during 2007 Mr. Gigliobianco made at least 30 trips in the Mooney in order to, inter alia, travel to job interviews.

Assuming arguendo that petitioners had carried their burden of establishing that pursuant to section 162(a) they paid or incurred during their taxable years 2007 and 2008, respectively, any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses in carrying on Mr. Gigliobianco's business as a licensed flight instructor, on the record before us, we find that petitioners have failed to carry their burden of establishing that any of those expenses are ordinary expenses within the meaning of section 162(a) in carrying on that business.[12]

We turn now to whether the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses are necessary expenses within the meaning of

---

[12]Furthermore, on the record before us, we do not believe that it was reasonable for petitioners to have taken the position in each of the 2007 return and the 2008 return that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses, respectively, are ordinary expenses within the meaning of sec. 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor.

**[\*23]** section 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor. In general, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. See Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), aff'd, 777 F.2d 662 (11th Cir. 1985). An expense is necessary only to the extent that it is "reasonable in relation to its purpose." See Boser v. Commissioner, 77 T.C. 1124, 1133 (1981), aff'd without published opinion (9th Cir. Dec. 22, 1983).

Petitioners argue that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses relating to the Mooney are necessary expenses within the meaning of section 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor because Mr. Gigliobianco would not have been able to maintain proficiency as a pilot in maneuvering and controlling an airplane like the Mooney if he had not purchased and flown that airplane to "gain proficiency with maneuvers and controls".

Petitioners offered no reliable evidence that Mr. Gigliobianco used the Mooney during each of the years 2007 and 2008 in order to maintain proficiency in maneuvering and controlling that and similar airplanes, let alone that purchasing and maintaining the Mooney was appropriate and helpful during each

[*24] of the years 2007 and 2008 to the operation of Mr. Gigliobianco's business as a licensed flight instructor.

Assuming arguendo that petitioners had carried their burden of establishing that pursuant to section 162(a) they paid or incurred during their taxable years 2007 and 2008, respectively, any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses in carrying on Mr. Gigliobianco's business as a licensed flight instructor, on the record before us, we find that petitioners have failed to carry their burden of establishing that any of those expenses are necessary expenses within the meaning of section 162(a) in carrying on that business.[13]

Assuming arguendo that petitioners had carried their burden of establishing that pursuant to section 162(a) they paid or incurred during their taxable years 2007 and 2008, respectively, any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses in carrying on Mr. Gigliobianco's business as a licensed flight instructor, on the record before us, we find that

---

[13]Furthermore, on the record before us, we do not believe that it was reasonable for petitioners to have taken the position in each of the 2007 return and the 2008 return that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses, respectively, are necessary expenses within the meaning of sec. 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor.

[*25] petitioners have failed to carry their burden of establishing that any of those expenses are ordinary and necessary expenses within the meaning of section 162(a) in carrying on that business.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled to deduct under section 162(a) any of (1) the 2007 claimed Schedule C expenses and (2) the 2008 claimed Schedule C expenses, except for $250 for petitioners' taxable year 2007 that we have found Mr. Gigliobianco paid during that year to take a training course after which the FAA renewed his flight instructor's license in 2007.[14]

Claimed Schedule E Loss

It is petitioners' position that they are entitled to deduct the 2007 claimed Schedule E loss as a "flow through loss" from PIC. Respondent disagrees.

Petitioners claimed in the 2007 Schedule E as a nonpassive loss $15,039, which was equal to Mr. Gigliobianco's 50-percent share of the PIC loss of

---

[14]Assuming arguendo that we had found that petitioners had carried their burden of establishing their entitlement to deduct under sec. 162(a) the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses, petitioners would still have to satisfy the requirements of sec. 274(d) with respect to certain of those expenses subject to that section. On the record before us, we find that petitioners have failed to carry their burden of establishing that they satisfy those requirements with respect to those expenses.

**[\*26]** $30,078 shown in PIC's 2007 Form 1120S. The PIC loss was calculated as the difference between the total income of $2,000 reported and the total deductions of $32,078 claimed in that form. Petitioners acknowledge that they do not have any documentation of PIC supporting their position (1) that PIC is entitled to the total deductions of $32,078 that it claimed in PIC's 2007 Form 1120S, (2) that therefore PIC has a loss of $30,078 as claimed in that form, and (3) that accordingly petitioners are entitled to the 2007 claimed Schedule E loss of $15,039.

In support of their position that they are entitled to the 2007 claimed Schedule E loss of $15,039, petitioners advance petitioners' equitable estoppel argument, which is the same argument that they advance with respect to the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses. For the same reasons we reject petitioners' equitable estoppel argument with respect to those respective claimed Schedule C expenses, we reject that argument with respect to the 2007 claimed Schedule E loss.

Assuming arguendo that petitioners had carried their burden of establishing that PIC is entitled to the total deductions of $32,078 and the loss of $30,078 that it claimed in PIC's 2007 Form 1120S, petitioners would nonetheless have to

[*27] establish that they are entitled to deduct 50 percent of that loss, as they claimed in their 2007 Schedule E.

A stockholder of an S corporation is required to report in the stockholder's tax return such stockholder's pro rata share of an S corporation's "nonseparately computed income or loss". Sec. 1366(a)(1). As pertinent here, nonseparately computed income or loss is defined as "gross income minus the deductions allowed to the corporation". Sec. 1366(a)(2). An S corporation's nonseparately computed loss is deductible by a stockholder to the extent of the sum of such stockholder's adjusted basis in the stock of the S corporation and such stockholder's adjusted basis in any indebtedness of the S corporation to such stockholder. Sec. 1366(d)(1)(A) and (B).

Petitioners offered no evidence establishing Mr. Gigliobianco's adjusted basis in the stock of PIC that he owned during 2007. Nor have petitioners offered any evidence establishing whether there was any indebtedness of PIC to Mr. Gigliobianco during 2007 and, if so, Mr. Gigliobianco's adjusted basis in any such indebtedness. As a result, assuming arguendo that petitioners had carried their burden of establishing that PIC is entitled to the total deductions of $32,078 and the loss of $30,078 that it claimed in PIC's Form 1120S, on the record before us, we find that petitioners have failed to carry their burden of establishing that the

**[*28]** sum of (1) Mr. Gigliobianco's adjusted basis in the stock of PIC that he owned during 2007 and (2) his adjusted basis in any indebtedness of PIC to him during 2007 equals at least $15,039, the share of the PIC loss that petitioners claimed in the 2007 Schedule E.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled to deduct the 2007 claimed Schedule E loss.

Addition to Tax Under Section 6651(a)(1)

In the case of a failure to file a tax return on the date prescribed for filing, section 6651(a)(1) imposes an addition to tax equal to 5 percent of the amount required to be shown in the return, with an additional 5 percent to be added for each month or partial month during which such failure continues, not to exceed 25 percent in the aggregate. The addition to tax under section 6651(a)(1) does not apply if it is shown that the failure to file was due to reasonable cause and not due to willful neglect. In order to prove reasonable cause, the taxpayer must show that, despite the exercise of ordinary business care and prudence, he or she was nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989).

**[\*29]** The Commissioner bears the burden of production with respect to any penalty or addition to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy the Commissioner's burden of production, the Commissioner must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty or addition to tax. Higbee v. Commissioner, 116 T.C. at 446. Although the Commissioner bears the burden of production with respect to any penalty or addition to tax, the Commissioner "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Id. at 446.

Generally, the date on which an individual is required to file a tax return is April 15 following the close of the calendar year to which the return relates. Sec. 6072(a). A taxpayer may request an automatic extension of time to file an individual tax return by filing on or before April 15 following the close of the calendar year to which it relates Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (Form 4868). See sec. 1.6081-4T, Temporary Income Tax Regs., 70 Fed. Reg. 67359 (Nov. 7, 2005). The parties stipulated that petitioners filed their 2007 return on June 10, 2008, after the due date of April 15, 2008. The record does not establish that petitioners filed Form 4868 on or before April 15, 2008.

**[\*30]** On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the addition to tax under section 6651(a)(1) that respondent determined in the notice.

Petitioners argue that they relied on their "accountant"[15] to prepare their 2007 return and that therefore they should not be liable for the addition to tax under section 6651(a)(1) that respondent determined in the notice. It is well established that "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." United States v. Boyle, 469 U.S. 241, 252 (1985).

On the record before us, we find that petitioners have failed to carry their burden of establishing that their failure to file timely their 2007 return was due to reasonable cause and not due to willful neglect.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are not liable for their taxable year 2007 for the addition to tax under section 6651(a)(1).

---

[15]Although petitioners' 2007 return was signed by a paid preparer named Dennis P. Clark, the record does not establish that he is an accountant.

**[\*31]** <u>Accuracy-Related Penalty Under Section 6662(a)</u>

Section 6662(a) imposes an accuracy-related penalty of 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable person would do under the circumstances. <u>Leuhsler v. Commissioner</u>, 963 F.2d 907, 910 (6th Cir. 1992), <u>aff'g</u> T.C. Memo. 1991-179; <u>Antonides v. Commissioner</u>, 91 T.C. 686, 699 (1988), <u>aff'd</u>, 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year

**[\*32]** exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000.  Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion.  Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a professional may demonstrate reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith.  Id.  In this connection, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional concerning substantive tax law was objectively reasonable.  Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), aff'g T.C. Memo. 1993-480.  A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional.  Neonatology

**[\*33]** <u>Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 99 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002); <u>see also</u> <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

Respondent argues that petitioners are liable for the accuracy-related penalty under section 6662(a) because of (1) a substantial understatement of tax under section 6662(b)(2) and (2) petitioners' negligence or disregard of rules or regulations under section 6662(b)(1).

On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).[16]

It is petitioners' position that under section 6664(c)(1) they had reasonable cause for, and acted in good faith with respect to, the respective underpayments for their taxable years 2007 and 2008 because they relied on the advice of their "accountant" in preparing their tax returns for those years.[17] Petitioners offered no evidence regarding what, if any, information they gave their "accountant" to assist

---

[16]For example, as discussed above, on the record before us, we do not believe that it was reasonable for petitioners to have taken the position in each of the 2007 return and the 2008 return that the 2007 claimed Schedule C expenses and the 2008 claimed Schedule C expenses, respectively, are ordinary and necessary expenses within the meaning of sec. 162(a) in carrying on Mr. Gigliobianco's business as a licensed flight instructor.

[17]The record does not establish that an "accountant" or any other paid preparer prepared petitioners' 2008 return. <u>See</u> <u>supra</u> note 4.

**[\*34]** that "accountant" in preparing their 2007 return and their 2008 return.  See

Goldman v. Commissioner, 39 F.3d at 408.  In addition, petitioners failed to offer

any evidence regarding what, if any, advice their "accountant" gave them.  See

Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99.  It is also significant

that petitioners did not call as a witness at the trial in this case their "accountant".

Nor did petitioners explain why they failed to call their "accountant" to testify.  We

presume that the testimony of petitioners' "accountant" would not have been

favorable to their position.  See Wichita Terminal Elevator Co. v. Commissioner, 6

T.C. at 1165.

On the record before us, we find that petitioners have failed to carry their

burden of establishing that there was reasonable cause for, and that they acted in

good faith with respect to, the respective underpayments for their taxable years

2007 and 2008.

Based upon our examination of the entire record before us, we find that

petitioners have failed to carry their burden of establishing that they are not liable

for each of their taxable years 2007 and 2008 for the accuracy-related penalty under

section 6662(a).

**[\*35]** We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and a concession of respondent,

<u>Decision will be entered under</u>

<u>Rule 155</u>.